**Jason Thomas JONES, Petitioner, Appellant,**

v.

**COMMISSIONER OF PUBLIC SAFETY, Respondent.**

No. C4–02–1936.

Court of Appeals of Minnesota.

May 13, 2003.

Derek A. Patrin, Gerald Miller & Associates, P.A., Minneapolis, MN, for appellant.

Mike Hatch, Attorney General, Darren Dejong, Assistant Attorney General, Saint Paul, MN, for respondent.

Considered and decided by WRIGHT, Presiding Judge, RANDALL, Judge, and SHUMAKER, Judge.

## OPINION

RANDALL, Judge.

Appellant challenges the district court's order sustaining the revocation of his driver's license arguing that his right to counsel was not vindicated because the dispatcher did not verify that appellant was out of time to contact an attorney when an attorney tried to reach him. Rather, the dispatcher prevented appellant from speaking to his attorney before deciding whether to submit to an alcohol-concentra-

tion test. Since appellant's limited right to counsel was not vindicated, we reverse.

## FACTS

On February 2, 2002, at approximately 12:05 a.m., the White Bear Lake Police Department ("WBLPD"), received three telephone calls reporting erratic driving. The callers indicated that the vehicle in question was a red pickup truck that "took out a stop sign and fire hydrant near an intersection." Officer Scott Mueller was dispatched to the area and discovered appellant in his driveway, which is a short distance from the damaged hydrant and sign, talking to another officer. Appellant informed Mueller that the truck had not been driven for quite awhile. However, Mueller confirmed recent driving because the vehicle's engine was warm. Eventually, appellant admitted he had driven the vehicle and that he had been drinking. Appellant indicated that he had consumed two beers, two mixed drinks and two shots at a bar. Appellant did not mention any postdriving consumption.

After failing field sobriety tests, appellant was arrested for driving while impaired (DWI) and was transported to WBLPD. Upon arrival at WBLPD, Officer Mueller brought appellant to the booking room and Mueller read appellant the implied consent advisory. Appellant indicated that he wanted to speak with an attorney and he was provided with a telephone, various telephone directories, and given approximately 38 minutes to contact an attorney. After being warned that his time was nearing an end, appellant made five or six phone calls to a friend and his sister. Thereafter, appellant called Gerald Miller & Associates, attorneys, and left a message with the answering service. Eric Nelson, an attorney then employed by Gerald Miller & Associates, received the message and immediately called WBLPD.

When Nelson called the WBLPD number that appellant had provided on the answering machine, there was no answer. Nelson then dialed information to get WBLPD's main number and made a second attempt to contact appellant by dialing the main number. Nelson spoke with a dispatcher and identified himself as an attorney attempting to contact appellant. The dispatcher placed Nelson on hold. Shortly thereafter, the dispatcher informed Nelson that appellant's time had ended and that Nelson would not be allowed to speak with appellant. Nelson again identified himself as an attorney and stated that he had just received the page within the last minute and did not understand why he was not being permitted to speak to appellant. The dispatcher placed Nelson on hold a second time and again informed him that appellant's time had expired. As a result, Nelson was prevented from talking to appellant.

Officer Mueller was in the booking room the entire time, and testified at the hearing that no one ever contacted him, or asked him if appellant's time was up. There was no evidence in the record showing that Officer Mueller, or anyone else who would know when appellant's time was up, had any contact with the dispatcher. Appellant was unable to speak with legal counsel before his allotted 38 minutes were up. He was asked to submit to chemical testing for blood alcohol or have his driving privileges revoked. Appellant consented to the test and the results showed an alcohol concentration of 0.16.

The district court sustained revocation of appellant's driver's license under Minn. Stat. § 169.123 (2002), finding that appellant was clearly under the influence of alcohol at the time of driving due to his erratic driving conduct. Further, the court found that appellant's right to counsel was vindicated because: (1) appellant

was given a reasonable amount of time to contact an attorney; (2) appellant did not make a good faith and sincere effort to reach an attorney; and (3) appellant failed to make appropriate and productive use of his time. This appeal followed.

## ISSUE

On these facts, did the state vindicate appellant's right to counsel?

## ANALYSIS

■ The critical issue we face is whether WBLPD officers vindicated appellant's right to consult an attorney prior to having him submit to alcohol-concentration testing. The district court concluded that this is a mixed question of law and fact and the reasonableness of the length of time the officers gave the appellant to contact an attorney is not determinative. We agree. A mixed question of law and fact requires us "to apply the controlling legal standard to historical facts" as determined by the district court. *State v. Wiernasz,* 584 N.W.2d 1, 3 (Minn.1998).

■ Under the Minnesota Constitution, drivers have the right, "upon request, to a reasonable opportunity to obtain legal advice before deciding whether to submit to chemical testing." *Friedman v. Comm'r of Pub. Safety,* 473 N.W.2d 828, 835 (Minn.1991) (interpreting Minn. Const. Art. 1, § 6). The right to counsel is limited in DWI cases to ensure that consultation does not unreasonably delay the administration of the test. However, police officers are obliged to inform an intoxicated driver of his right to counsel and must assist in vindicating that right. *Gergen v. Comm'r of Pub. Safety,* 548 N.W.2d 307, 309 (Minn.App.1996), *review denied* (Minn. Aug. 6, 1996). The right to counsel is considered vindicated when the driver is provided with a telephone prior to testing and given a reasonable amount of time to

contact and consult with an attorney. *Kuhn v. Comm'r of Pub. Safety,* 488 N.W.2d 838, 841–42 (Minn.App.1992), *review denied* (Minn. Oct. 20, 1992). There are three factors that have been established to ascertain what constitutes a reasonable amount time: (1) the time of day; (2) the length of time the driver has been under arrest; and (3) whether the driver made a good faith and sincere effort to contact counsel. *Id.* at 842.

Here, the district court superficially relied on these factors to conclude that appellant's right to counsel was vindicated. The court found that appellant was given a reasonable amount of time to contact counsel. Specifically, the court found:

> Petitioner was given the opportunity to consult with legal counsel. His attempts to contact legal counsel were videotaped. According to the meter on the videotape, Petition was given from 1:10 am to 1:48 to contact counsel. Unable to do so after 38 minutes, Petitioner was asked to submit to a breath test or to have his privileges revoked for refusal; Petitioner submitted and the result was .16.

■ Appellant correctly indicates that the district court erroneously analyzed the issue by focusing its analysis only on whether appellant was given reasonable time to contact counsel and whether appellant made productive use of his time. Instead, the district court should have focused its analysis on the fact that the dispatcher twice denied Nelson access to appellant. The dispatcher placed Nelson on hold twice and each time informed Nelson that appellant's time had expired. There was no evidence in the record that the dispatcher had ever contacted Officer Mueller or anyone else to determine appellant's time was up. Officer Mueller testified that he had absolutely no contact with any WBLPD dispatcher during appellant's 38 minute allotted time. The district

court's findings did not even mention the dispatcher's actions.

The initial burden is on the commissioner to show that they assisted appellant to vindicate his right to counsel. In this case, the state met this initial burden by providing him a phone, phone directories, and 38 minutes in which to contact an attorney. However, this does not end the inquiry. Appellant did contact an attorney's answering service and an attorney almost immediately called him back. With these facts of record in place, the burden of production shifts to the state to provide a reasonable explanation why the dispatcher, admittedly not involved in the testing, and not in contact with Officer Mueller, decided to deny attorney Nelson access to appellant.

The state argued that the Nelson's call was immaterial because appellant did not make a good faith effort to contact an attorney. It is difficult for us to conclude that appellant did not make a good-faith effort when his effort actually produced a callback from an attorney. The state needed to provide a rational explanation to the trial court, explaining why the dispatcher denied Nelson access to appellant. The state failed to provide any explanation at all. At oral argument, the state posited that "perhaps" the dispatcher went to the testing room and saw that appellant was already taking the test and, thus, concluded that any consultation time was over. This would be a reasonable explanation; however, there is no evidence in the record to indicate that it happened that way.

A camera in the booking room recorded appellant's entire calling period. The tape reveals an unidentified person entering the room with the phone books and then leaving. The state speculated at oral argument that the unidentified person reported back to the dispatcher. This would also be a reasonable possibility; but no evidence

in the record shows this is what happened. The videotape revealed that Officer Mueller had a radio connected to his shoulder and was seen talking into it. If Officer Mueller or the dispatcher provided any testimony that they talked, or if Officer Mueller informed the dispatcher that appellant's time was up, this would explain the dispatcher's refusal to give Nelson access to appellant. Since Officer Mueller was responsible for setting and controlling appellant's allotted time, it is the most likely explanation that he would have informed dispatch that appellant's time was up. However, Officer Mueller, with praiseworthy candor, testified that he had no contact with dispatch.

The state made a solid showing that appellant was provided access to telephone books, a telephone, and allotted 38 minutes to contact counsel. However, it failed to produce any explanation as to why the dispatcher concluded that appellant's time had expired and denied Nelson the opportunity to speak to appellant. On appellate review, we cannot add to the record what the state failed to supply. Because the dispatcher denied Nelson access to appellant, and the state failed to provide evidence why the dispatcher concluded appellant's time was up, we are compelled to conclude that appellant's limited right to counsel was not vindicated.

### DECISION

Appellant's attorney was denied access to appellant, and the state failed to produce a reasonable explanation for the denial. On this record, appellant's right to counsel was not vindicated.

**Reversed.**