**STATE of Minnesota, Appellant,**

v.

**Randy Leroy SCHMIDT, Respondent.**

No. A05–218.

Court of Appeals of Minnesota.

Aug. 9, 2005.

Mike Hatch, Attorney General, St. Paul, MN; and Brian D. Roverud, Faribault County Attorney, Blue Earth, MN, for appellant.

John M. Stuart, State Public Defender, Mark D. Nyvold, Special Assistant Public Defender, St. Paul, MN; and Bradley James Peyton, Fairmont, MN, for respondent.

Considered and decided by RANDALL, Presiding Judge; KALITOWSKI, Judge; and WORKE, Judge.

## OPINION

WORKE, Judge.

The district court granted respondent's motion to dismiss counts one and two of a four-count criminal complaint, charging respondent with one count of first-degree DWI, in violation of Minn.Stat. § 169A.20, subd. 1(1) (2002); one count of first-degree refusal, in violation of Minn.Stat. § 169A.20, subd. 2 (2002); one count of driving after revocation, in violation of Minn.Stat. § 171.24, subd. 2 (2002); and one count of open bottle, in violation of Minn.Stat. § 169A.35, subd. 3 (2002). On this appeal from the district court's pretrial order, the state contends that the district court erred in dismissing the two felony counts and that dismissal has a critical impact on the trial. Concluding that while dismissing counts one and two has a critical impact on the trial, the district court did not err in dismissing the two felony counts. We affirm.

## FACTS

On March 1, 2004, an officer with the Blue Earth Police Department received a report of an intoxicated person attempting to purchase fuel at a gas station. After observing indicia of intoxication, the officer asked respondent Randy Leroy Schmidt to perform field sobriety tests and submit to a preliminary breath test. Respondent refused, and the officer placed him under arrest for driving while impaired. The officer read respondent the Minnesota Implied Consent Advisory, and respondent refused to submit to a breath test or blood test. An opened bottle of alcohol was found in respondent's vehicle. A check of respondent's driving history indicated 11 DWI convictions in South Dakota from

1985–2002, one DWI conviction in Minnesota on May 25, 2000, and that respondent's driver's license was revoked.[1] Under Minnesota law, respondent's history of multiple DWI offenses permitted enhancement of his current charge.[2]

On October 25, 2004, respondent moved to dismiss counts one and two of the complaint based on *State v. Bergh*, 679 N.W.2d 734 (Minn.App.2004). Respondent argued that because the prior convictions and revocations used to enhance the current charges were from South Dakota, and he was not advised of his right to counsel prior to submitting to any of the testing in South Dakota, the felony counts should be dismissed. The district court issued an order dismissing counts one and two of the complaint, and finding that respondent's prior DWI convictions and license revocations from South Dakota could not be used to enhance his current offense because his Minnesota constitutional rights were violated when he was not given the opportunity in South Dakota to consult with an attorney prior to deciding whether to submit to a test.

## ISSUE

Did the district court clearly err in dismissing counts one and two of the complaint?

## ANALYSIS

 1. When the state appeals a pretrial order, the district court must be affirmed unless the state demonstrates clearly and unequivocally that (1) the district court erred in its judgment, and (2) unless reversed, the error will have a critical impact on the trial's outcome. *State v. Joon Kyu Kim*, 398 N.W.2d 544, 547 (Minn.1987). Dismissal of a complaint satisfies the critical impact requirement. *State v. Dendy*, 598 N.W.2d 4, 6 (Minn. App.1999), *review denied* (Minn. Sept. 28, 1999). Thus, this court must consider whether the state met its burden of establishing that the district court clearly erred in application of law to the undisputed facts of this case. *State v. Trei*, 624 N.W.2d 595, 597 (Minn.App.2001).

 Appellant argues that the district court erred in ruling that because respondent had no pre-testing right to counsel in South Dakota, his prior South Dakota DWI convictions and revocations cannot be used to enhance the current offense from a gross misdemeanor to a felony. Appellant does not dispute that, with the exception of one May 2000 Minnesota DWI conviction, respondents prior DWI convictions and license revocations occurred in South Dakota. Appellant also concedes that in South Dakota a driver is not entitled to assistance of counsel prior to deciding whether to submit to a chemical analysis to determine intoxication under the implied-consent law. *Blow v. Commr. of Motor Vehicles*, 83 S.D. 628, 164 N.W.2d 351, 354 (1969). In Minnesota, however, a driver has a limited right to consult with an attor-

1. Since 1995, respondent has been convicted four times for DWI—three times in South Dakota (April 1995, April 1998, and November 2002) and one time in Minnesota (May 2000). Respondent also has five prior license revocations in the past ten years.

2. Under Minnesota law "[a] person who violates section 169A.20 is guilty of first-degree driving while impaired if the person (1) commits the violation within ten years of the first of three or more qualified prior impaired driving incidents...." Minn.Stat. § 169A.24, subd. 1(1) (2002). " 'Qualified prior impaired driving incident' includes prior impaired driving convictions and prior impaired driving-related losses of license." Minn.Stat. § 169A.03, subd. 22 (2002). "Prior impaired driving-related losses of license" includes a driver's-license revocation under Minn.Stat. § 171.17 (2002). Minn.Stat. § 169A.03, subd. 21(a)(1) (2002).

ney before deciding whether to submit to chemical testing. *Friedman v. Commr. of Pub. Safety,* 473 N.W.2d 828, 833 (Minn. 1991). In *Friedman,* the Minnesota Supreme Court held that under the Minnesota Constitution the pre-testing phase of an implied-consent or DWI proceeding is a "critical stage" at which a driver has a limited right to consult with an attorney. *Id.* at 833–35.

Appellant contends that the district court erred in relying on *State v. Bergh,* 679 N.W.2d 734 (Minn.App.2004), and dismissing counts one and two of the complaint. In *Bergh,* a driver was charged with first-degree DWI based upon three qualified prior impaired-driving incidents, including one revocation of his Colorado driver's license following a Colorado DWI conviction. 679 N.W.2d at 736. The Colorado DWI conviction and license revocation were based on a chemical test, and, under Colorado law, the driver was not entitled to consult with an attorney before deciding whether to submit to chemical testing. *Id.* The driver argued that because Colorado law violated his Minnesota constitutional right to the assistance of counsel, neither the Colorado conviction nor the revocation could be used to enhance the Minnesota offense to first-degree DWI. *Id.* The district court ruled that the Colorado conviction could not be used to enhance the Minnesota offense, but that the Colorado license revocation could be used for enhancement. *Id.* On appeal, this court held that the revocation could not be used to enhance the driver's Minnesota offense because the driver's Colorado license revocation depended on the driver's chemical-test failure, and the driver was denied his right to consult with an attorney before deciding whether to submit to chemical testing. *Id.* at 738.

Appellant argues, however, that this case is controlled by *State v. Dumas,* 587 N.W.2d 299 (Minn.App.1998). In *Dumas,* this court determined the reach of *State v. Nordstrom,* 331 N.W.2d 901 (Minn.1983), in which the Minnesota Supreme Court held that a criminal conviction in which the defendant was not represented by counsel and the right to counsel was not properly waived, could not be used to enhance a subsequent DWI offense. *Dumas,* 587 N.W.2d at 302. The issue in *Dumas* was whether *Nordstrom* prohibited the use of any prior uncounseled finding to enhance a charge, or whether it prohibited enhancement only when the prior finding was obtained in violation of a defendants *constitutional rights. Id.* This court read *Nordstrom* as "prohibiting the use of a prior *unconstitutionally* obtained conviction to enhance a subsequent charge." *Id.* In *Dumas,* the driver did not allege that the past license revocation used to enhance the current offense was *unconstitutionally* obtained. *Id.* This court held that the statutory provision enhancing DWI and test-refusal offenses on the basis that they occurred within five years of an uncounseled license revocation under the implied-consent law did not violate the defendants right to counsel. *Id.* at 305. But the driver in *Bergh* claimed that his constitutional rights were violated when he was denied pre-test assistance of counsel; the driver in *Dumas* did not claim any constitutional violation. *Bergh,* 679 N.W.2d at 737.

Appellant also contends that prior uncounseled license revocations may be used to enhance a current criminal offense because there must be a conviction before constitutional protections apply, and a conviction does not occur when a license is revoked and a driver is not exposed to the possibility of imprisonment. *Bergh* addressed this purported distinction between civil and criminal labels in determining enhancement issues and stated that "[i]n Minnesota, the entire constitutional focus

is on the moment a motorist is asked to submit to a chemical test. At that moment, the limited constitutional right of assistance of counsel is triggered irrespective of what subsequent proceeding might ensue." *Id.* at 737. As this court concluded in *Bergh*, in Minnesota, the pre-testing phase of an implied-consent or DWI proceeding is a "critical stage" at which a driver has a limited right to consult with an attorney. *Id.* The constitutional right to assistance of counsel is not dependent on whether the test is used in a criminal or civil proceeding; thus, the constitutional violation is complete at the moment assistance of counsel is denied. *Id.* at 737–38.

Appellant further suggests that the rule from *Bergh* presents equal-protection problems in two specific situations. First, appellant argues that application of this rule creates a disparity in the treatment of in-state and out-of-state license revocations. Appellant points to *State v. McLellan*, 655 N.W.2d 669 (Minn.App.2003), in which this court held that enhancement of a DWI charge based on a prior revocation of a driver's Minnesota driver's license following an uncounseled guilty plea to DWI in another state did not violate due process. In *McLellan*, however, the enhancement was not based on the uncounseled guilty plea to the out-of-state DWI, but rather was enhanced because the driver's Minnesota driver's license was revoked as a result of the DWI conviction. *Id.* at 671. Moreover, the driver in *McLellan* did not petition for judicial review under Minn. Stat. § 169A.53 (2003); therefore, the Minnesota license revocation went unchallenged. *Id.*

■ Next, appellant argues that licensed Minnesota drivers are adversely affected by the disparity in treatment in comparison to other states. Appellant suggests that when a Minnesota driver is convicted of DWI in South Dakota, the matter is referred to Minnesota, the driver's Minnesota driver's license is revoked, and the revocation can be used for enhancement; whereas, a driver from South Dakota charged with DWI in Minnesota escapes an aggravated charge because prior DWI convictions and license revocations from South Dakota cannot be used for enhancement in Minnesota. This argument is not persuasive because states have the right to interpret their own constitutions to grant a more expansive right to counsel than the right afforded by the Sixth Amendment to the United States Constitution. *Friedman*, 473 N.W.2d at 830–31. Additionally, when a Minnesota driver is convicted of DWI in South Dakota and that conviction is referred to Minnesota for license revocation, the driver is afforded an opportunity for judicial review. The driver's license is automatically revoked. Minn.Stat. § 171.17(a) (2004). But the driver can petition for reinstatement. Minn.Stat. § 171.19 (2004).

■ 2. Appellant suggests that this court should analyze this case differently from *Bergh* to avoid violating the principle of *stare decisis* that binds this court to follow its own decisions. *See, e.g., State v. DeShay*, 645 N.W.2d 185, 189 (Minn.App. 2002), *aff'd*, 669 N.W.2d 878 (Minn.2003). Appellant relies on *State v. Lucas*, 372 N.W.2d 731 (Minn.1985), and *State v. Heaney*, 689 N.W.2d 168 (Minn.2004), in proposing that this court adopt an exclusionary-rule analysis in determining when to use DWI convictions and license revocations resulting from uncounseled pre-test determinations for enhancement purposes.

In *Lucas*, the defendant argued that the Minnesota district court erred in admitting tape recordings of phone conversations recorded in Wisconsin without a search warrant because although Wisconsin law is similar to Minnesota's in that the taping of a conversation is lawful if one party to the

conversation consents, the resulting tape is inadmissible in a Wisconsin judicial proceeding unless the taping was authorized by a search warrant. *Lucas*, 372 N.W.2d at 736. The supreme court concluded that although the taped conversations would be admissible in Minnesota through any one of four approaches, an exclusionary-rule analysis was appropriate to determine the admissibility of evidence obtained in another state. *Id.* at 736–37. The supreme court considered the policy reasons underlying an exclusionary-rule analysis and held that the district court correctly refused to suppress the evidence because neither the Wisconsin police nor the Minnesota police violated the laws of either state in recording the conversation. *Id.* Thus, based on the three policy reasons underlying an exclusionary-rule analysis, the evidence was admissible because excluding the tapes would not serve to deter police misconduct, admission of the tapes did not compromise judicial integrity, and admitting the evidence did not permit Minnesota courts to profit from any wrongdoing. *Id.* at 737. The supreme court, however, refrained from expressing an opinion regarding the appropriate analysis when evidence has been obtained in violation of the law of either the place of the search or the forum state, or both. *Id.*

In *Heaney*, a driver in a one-vehicle accident in Minnesota was charged with criminal vehicular operation resulting in death and substantial bodily harm. *Heaney*, 689 N.W.2d at 170–71. The district court granted, and the court of appeals affirmed, the driver's motion to suppress alcohol-concentration evidence obtained at the Wisconsin medical center to which the driver was transported following the accident that showed his alcohol concentration was more than .10 within two hours after the accident on grounds that it violated Minnesota's physician-patient-privilege statute. *Id.* at 171. While the supreme

court reversed, it agreed with the lower courts that the exclusionary-rule analysis from *Lucas* was not appropriate for the facts in *Heaney*. *Id.* at 172. The supreme court stated that a traditional conflict-of-law analysis was appropriate to determine the admissibility of evidence obtained in another state in a criminal case. *Id.* at 172.

Appellant relies on the court's discussion in *Heaney* stating that "[w]here the police have engaged in illegal conduct in obtaining evidence or where, as in *Lucas*, police conduct was lawful but a statute concerning privacy interests renders the evidence inadmissible, an exclusionary rule analysis is appropriate." *Id.* at 172. Appellant suggests that because the police conduct in South Dakota of performing uncounseled tests is not illegal in the search state, but such conduct is made illegal in the forum state rendering the evidence inadmissible, the court should perform an exclusionary-rule analysis and determine that the prior South Dakota DWI convictions and license revocations are admissible to enhance respondents current Minnesota offense. This argument is flawed because neither of the two appropriate situations for an exclusionary-rule analysis is present here. First, the South Dakota police did not engage in illegal conduct in obtaining evidence. Second, *Lucas* and *Heaney* both deal with state statutes, not the violation of constitutional rights. The language appellant relies on specifically states: "[A] statute concerning privacy interests renders the evidence inadmissible. . . ." *See Heaney*, 689 N.W.2d at 172. That is not the case here when an individuals limited constitutional right to counsel in a pre-testing situation is implicated.

Here, respondent was charged with first-degree DWI and first-degree refusal after prior DWI convictions and related license revocations from South Dakota

were used to enhance the current offense. Appellant concedes that South Dakota does not offer drivers a right to counsel prior to deciding whether to submit to testing. This case is controlled by *Bergh* because respondent's Minnesota constitutional rights were violated when he was not permitted to consult with an attorney prior to deciding whether to submit to testing in South Dakota; therefore, the prior convictions and related license revocations that occurred in South Dakota cannot be used to enhance respondent's current offense in Minnesota.

## DECISION

Appellant has not clearly demonstrated that the district court erred in its application of the law to the undisputed facts of this case. Respondents prior South Dakota DWI convictions and license revocations cannot be used to enhance his current Minnesota offenses because the South Dakota convictions and related license revocations resulted from uncounseled chemical tests that violate respondents limited Minnesota constitutional right to counsel prior to deciding whether to submit to a chemical test.

**Affirmed.**