**STATE of Minnesota, Respondent,**

v.

**Nathan Dean SCHUSTER,
Appellant (A04–2278),**

**Wade William Little Owl,
Appellant (A05–41).**

**Nos. A04–2278, A05–41.**

Court of Appeals of Minnesota.

Jan. 31, 2006.

Mike Hatch, Attorney General, St. Paul, MN; and Lisa Nelson Borgen, Clay County Attorney, Jenny M. Samarzja, Assistant County Attorney, Moorhead, MN, for respondent.

John M. Stuart, State Public Defender, Leslie J. Rosenberg, Bridget Kearns Sabo, Assistant State Public Defenders, Minneapolis, MN, for appellants.

Considered and decided by PETERSON, Presiding Judge; TOUSSAINT, Chief Judge; and SHUMAKER, Judge.

## OPINION

SHUMAKER, Judge.

Appellants in these consolidated appeals challenge the district court's refusal to prohibit the use of North Dakota impaired driving convictions to enhance Minnesota impaired driving offenses. Because the prior convictions arise from violations of appellants' Minnesota constitutional rights, the prior convictions cannot be used to enhance Minnesota offenses, and we reverse.

## FACTS

The Minnesota Impaired Driving Code presents a scheme of penalties and enhanced penalties for driving, operating, or being in physical control of a motor vehicle while impaired from alcohol or other specified chemical substances. Minn.Stat. § 169A (2004). Certain qualified prior impaired driving incidents can be considered aggravating factors that permit enhancement of an impaired driving penalty. *See* Minn.Stat. § 169A.03, subd. 3(1) (stating that "a qualified prior impaired driving incident within the ten years immediately preceding the current offense" is an aggravating factor.).

Appellants Nathan Dean Schuster and Wade William Little Owl were arrested for driving while impaired (DWI) from alcohol in Minnesota in separate and unrelated incidents. Appellants' charges were enhanced based on prior driving while impaired convictions in North Dakota.

The state charged Schuster with two counts of second-degree DWI and one count of reckless driving. The state alleged that Schuster had two qualified prior impaired driving offenses that permitted enhancement of the current DWI charges to the second-degree level. *See* Minn.Stat. § 169A.25, subd. 1(a) (stating a person is guilty of second-degree DWI if two or more aggravating factors were present when the violation was committed).

Schuster had been convicted of DWI in Minnesota in March 1995. He does not challenge the use of this conviction as an enhancement factor. Schuster challenges the use of his North Dakota DWI conviction from October 1998, as an enhancement factor as applied to the current charges. During pretrial, Schuster moved to dismiss the charges, challenging the constitutionality of using North Dakota DWI convictions as the basis for enhanced charges because North Dakota violated his right to assistance of counsel prior to chemical testing. Schuster provided an affidavit with the motion, stating that he does not recall being advised of his right to counsel prior to chemical testing.

After the district court denied the motion in a pretrial order, Schuster waived his right to a jury trial and submitted the matter to the court under a *Lothenbach* stipulation to preserve for appeal the constitutional issue. *See State v. Lothenbach,* 296 N.W.2d 854 (Minn.1980). The district court counted the North Dakota conviction as an enhancement factor and found Schuster guilty of an enhanced count of DWI in the second-degree in violation of Minn.Stat. §§ 169A.20, subd. 1(5), 169A.25. The court stayed Schuster's jail sentence and placed him on probation, pending the outcome of this appeal.

Little Owl was charged with two counts of first-degree DWI, one count of disobeying a semaphore, and one count of driving after revocation. The state alleged that Little Owl had four qualified prior impaired driving offenses that permitted enhancement of the DWI charges from misdemeanor level offenses to felony offenses. *See* Minn.Stat. § 169A.24, subd. 1(1) (stating a person who has an impaired driving offense within ten years of three or more impaired driving incidents commits first-degree impaired driving).

Little Owl had four prior convictions for DWI or test refusal within the last ten years, one in Minnesota and three in North Dakota. Two of the North Dakota convictions were used to enhance the charges against Little Owl to felonies. Little Owl moved the district court to dismiss the charges because the use of the North Dakota convictions violated his Minnesota constitutional right to consult with an attorney before deciding whether to submit to chemical testing. Along with the motion, Little Owl submitted an affidavit stating that he was not informed of his right to counsel prior to chemical testing.

The district court denied the motion, and Little Owl submitted the matter to the court under a *Lothenbach* stipulation to preserve for appeal the constitutional issue. The district court counted the North Dakota convictions as impaired driving incidents and found Little Owl guilty of one count of first-degree DWI pursuant to Minn.Stat. §§ 169A.20, subd. 1, 169A.24. Little Owl was sentenced to a prison term of 42 months, with execution stayed for seven years on the condition that Little Owl serve one year in the Clay County Jail. Little Owl received credit for time served and was allowed to serve the remainder of his sentence on electronic home monitoring.

These appeals followed and were subsequently consolidated.

## ISSUE

May an uncounseled North Dakota DWI conviction be used in Minnesota to enhance DWI charges when Minnesota's constitutional right to pretest counsel, unlike that of North Dakota, requires that motorists be informed of their right to pretest counsel?

## ANALYSIS

### I.

Appellants challenge the use of prior North Dakota DWI convictions to enhance their current DWI charges.[1] The district court's denial of appellants' motion to prohibit the use of their North Dakota convictions to enhance their current charges raises an issue of law that this court reviews de novo. *State v. Bergh,* 679 N.W.2d 734, 737 (Minn.App.2004).

 In Minnesota, a motorist has a limited right to consult with an attorney

---

1. Appellant Little Owl submitted a pro se supplemental brief; however, it reiterates the argument raised in the formal brief and, therefore, need not be addressed separately.

before deciding whether to submit to chemical testing. *Friedman v. Comm'r of Pub. Safety,* 473 N.W.2d 828, 835 (Minn. 1991). An integral part of this right is notice of its existence. "A police officer not only must inform the driver of the right to counsel but also must assist in vindicating this right[,]" including providing a telephone and a reasonable amount of time to contact an attorney. *Gergen v. Comm'r of Pub. Safety,* 548 N.W.2d 307, 309 (Minn.App.1996), *review denied* (Minn. Aug. 6, 1996); *see also Jones v. Comm'r of Pub. Safety,* 660 N.W.2d 472, 475 (Minn. App.2003). This right to counsel is guaranteed under article I, section 6, of the Minnesota Constitution. *Friedman,* 473 N.W.2d at 833–34.

■■■ Under North Dakota law, a motorist has a qualified statutory right to consult with counsel prior to consenting to a blood test. *Kuntz v. State Highway Comm'r,* 405 N.W.2d 285, 290 (N.D.1987); *see also* N.D. Cent.Code § 29–05–20 (2004). Specifically, the North Dakota Supreme Court held that "if an arrested person asks to consult with an attorney before deciding to take a chemical test, he must be given a reasonable opportunity to do so if it does not materially interfere with the administration of the test." *Kuntz,* 405 N.W.2d at 290. But officers are not required to advise a motorist of the right to consult an attorney before taking a chemical test. *See McNamara v. Dir. of North Dakota Dep't of Transp.,* 500 N.W.2d 585, 591 (N.D.1993). In *McNamara,* a license suspension was upheld even though, prior to blood-alcohol testing, the motorist was not informed of his right to counsel by the officer, through the implied consent advisory,[2] or by recitation of *Miranda* warnings. *Id.* at 592. The court noted that it

recognized a limited right to pretesting consultation with an attorney, but that the right is triggered only if a suspect unilaterally requests an attorney. *Id.* at 591, n. 4.

■■ An out-of-state conviction or revocation obtained in violation of Minnesota's limited constitutional right to pretest counsel cannot be used to enhance Minnesota DWI charges. *Bergh,* 679 N.W.2d at 737; *see also State v. Nordstrom,* 331 N.W.2d 901, 905 (Minn.1983) (holding that a criminal conviction in which defendant was not represented could not be used to enhance subsequent DWI offense if the right to counsel was not properly waived). In *Bergh,* this court held that a DWI revocation obtained in Colorado was not in accord with Minnesota's constitutional right to pretest counsel because, under Colorado law, a motorist has no right to confer with counsel before deciding whether to consent to chemical testing. *Id.*

■■ Because North Dakota does not require that motorists be informed of their right to counsel prior to chemical testing, the right loses its meaningful purpose in practical application. *See McNamara,* 500 N.W.2d at 593 (Levine, J., dissenting) ("What good is a statutory right to consult with counsel before deciding to take a chemical test [citing *Kuntz* ], if a driver is not told of that right?"). The purpose of the right to counsel generally "is to protect the lay person who 'lacks both the skill and knowledge' to defend him- or herself." *Friedman,* 473 N.W.2d at 833 (citing *Powell v. Alabama,* 287 U.S. 45, 69, 53 S.Ct. 55, 64, 77 L.Ed. 158 (1932)). In the context of pretest consultation, the right to counsel is critical because "the person suspected of drunk driving is generally an average citi-

**2.** Minnesota's Implied Consent Advisory informs impaired driving suspects that they have a right to consult with an attorney.

North Dakota's Implied Consent Advisory, N.D. Cent.Code § 39–20–01, does not reference the suspect's pretest right to counsel.

zen in a totally new, confusing, and uncomfortable situation." *Id.* at 834. Given that the purpose of the right to counsel is to protect individuals unfamiliar with the legal system, it is implicit that those individuals first be informed that such a right exists.

Consequently, North Dakota's right to pretest counsel without an accompanying obligation to inform the motorist of such a right violates the Minnesota constitution. Thus, appellants' North Dakota convictions, depending as they did on the results of chemical tests to which appellants submitted without notice of their right to pretest counsel, cannot be used to enhance appellants' current Minnesota DWI charges.

## II.

Respondent contends that the "right to counsel" prior to chemical testing created by *Friedman* and applied by *Bergh* is inconsistent with Sixth Amendment jurisprudence, public policy, and the impaired driving statutes. Respondent further argues that it is improper to apply Minnesota constitutional protections to crimes occurring wholly outside of this state pursuant to *State v. Heaney*, 689 N.W.2d 168 (Minn. 2004).

### A. *Inconsistency of Friedman*

■■■■■ Essentially, respondent argues that this court should overturn *Friedman*. But this court has no authority to overrule decisions of the supreme court. *Mueller v. Theis*, 512 N.W.2d 907, 912 (Minn.App. 1994), *review denied* (Minn. Apr. 28, 1994). The *Friedman* decision has been applied both by this court and the supreme court. And the principle of *stare decisis* binds this court to follow its own decisions. *See State v. DeShay*, 645 N.W.2d 185, 189 (Minn.App.2002), *aff'd* 669 N.W.2d 878 (Minn.2003).

Additionally, respondent's concerns of inconsistency were addressed in the *Friedman* decision. In regard to respondent's contention that the right to pretest counsel is overly broad and therefore inconsistent with the Sixth Amendment of the United States Constitution, the *Friedman* court stated "[courts] are free to interpret their own law, however, so as to provide greater protection for individual rights than that which the federal Constitution minimally mandates." *Friedman*, 473 N.W.2d at 830 (citing *PruneYard Shopping Ctr. v. Robins*, 447 U.S. 74, 81, 100 S.Ct. 2035, 2040, 64 L.Ed.2d 741 (1980)). The supreme court also addressed respondent's public policy argument, noting that while drunk driving is a serious problem, "[t]he rights of all citizens embodied in our Minnesota Bill of Rights, however, are so important that they cannot be overridden for temporary expediency in building statistics." *Id.* at 835. Further, the interstate Driving License Compact and the Impaired Driving Statutes were enacted in 1989 and 2000, respectively, well before the decision in *Bergh*. *See* 1989 Minn. Laws ch. 307, § 5; 2000 Minn. Laws ch. 478, art. 1, § 2.

### B. *State v. Heaney*

Respondent also argues that the Minnesota Supreme Court's recent holding in *Heaney* rendered the application of *Friedman* and the Minnesota Constitution to DWIs occurring outside the State of Minnesota improper. 689 N.W.2d at 177. Specifically, respondent contends that because the supreme court refused to apply the Minnesota physician-patient privilege to acts occurring out-of-state in *Heaney*, it is improper to apply Minnesota constitutional protections to crimes occurring wholly outside Minnesota.

In *Heaney*, a motorist had an accident in Minnesota and was transported to Wisconsin where blood-alcohol testing was per-

formed. *Id.* at 170–71. The tests showed that the motorist's alcohol concentration was more than .10 within two hours after the accident. *Id.* The district court granted, and the court of appeals affirmed, the driver's motion to suppress the alcohol-concentration evidence obtained at the Wisconsin medical center on grounds that it violated Minnesota's physician-patient-privilege statute. *Id.* at 171. On appeal, the state argued that the exclusionary rule of *State v. Lucas*, 372 N.W.2d 731 (Minn. 1985), should· be applied to the circumstances, permitting the forum state to admit the evidence, even though it would have been unlawfully obtained in the forum state, because the seizure of the evidence was valid in the search state. *Heaney*, 689 N.W.2d at 172. Ultimately, the *Heaney* court reversed, but agreed with the lower courts that an exclusionary-rule analysis was not appropriate for the facts in *Heaney*, stating:

> Where the police have engaged in illegal conduct in obtaining evidence or where, as in *Lucas*, police conduct was lawful but a statute concerning privacy interests renders the evidence inadmissible, an exclusionary rule analysis is appropriate. But where, as here, there is neither conduct by police that is illegal under the statutes or constitution of either the forum or search jurisdictions, nor any statute or constitutional principle in the search jurisdiction that would make the evidence inadmissible, an exclusionary rule analysis does little to determine which state's law should be applied.

*Id.* at 172. The supreme court held that a traditional conflict-of-law analysis was appropriate to determine the admissibility of evidence obtained in another state in a criminal case. *Id.*

This court recently addressed the application of *Heaney* to out-of-state DWI con-victions. *State v. Schmidt*, 701 N.W.2d 313 (Minn.App.2005), *review granted* (Minn. Oct. 26, 2005). In *Schmidt*, the state argued that because the South Dakota police officers' performance of uncounseled tests was not illegal in the search state, but such conduct is illegal in the forum state rendering the evidence inadmissible, the court should perform an exclusionary-rule analysis and conclude that the prior South Dakota DWI convictions and license revocations are admissible to enhance respondent's current Minnesota offense. *Id.* at 318. This court found the state's argument flawed because neither of the two appropriate situations for the exclusionary-rule was present. *Id.* The South Dakota police did not engage in illegal conduct in obtaining evidence and the case did not involve state statutes. *Id.* This court determined that the exclusionary rule did not apply when an individual's limited constitutional right to counsel in a pretesting situation is implicated. Because this case presents the same circumstances addressed in *Schmidt*, respondent's reliance on *Heaney* necessarily fails.

## DECISION

Because appellants' prior North Dakota convictions resulted from chemical tests administered without appellants being informed of their pretest right to counsel, they violate appellants' Minnesota constitutional rights and may not be used to enhance their current Minnesota offenses.

**Reversed.**