**STATE of Minnesota, Appellant,**

v.

**Joseph Steven HEANEY, Respondent.**

**No. A03–1401.**

Supreme Court of Minnesota.

Dec. 2, 2004.

OPINION

MEYER, Justice.

The district court suppressed blood-alcohol evidence in the vehicular homicide prosecution of Joseph Heaney on the ground that the evidence is privileged under Minnesota's physician-patient privilege, set forth in Minn.Stat. § 595.02, subd. 1(d) (2002). The state appealed, claiming that an exception to Wisconsin's medical privilege statute, allowing for the admission of this type of evidence, should apply because treatment and blood testing occurred in Wisconsin. The court of appeals affirmed the suppression of the blood-alcohol evidence. We reverse.

During the early morning hours of November 18, 2001, a Minnesota peace officer responded to a one-vehicle rollover accident in Houston County, Minnesota. The officer determined shortly after arriving at the scene of the accident that one of the vehicle's four occupants had died. Respondent, Joseph Heaney, admitted to the officer that he had been driving the vehicle involved in the accident and that he and his friends had been consuming alcohol earlier that evening. The officer administered a portable breath test to Heaney, resulting in a reading of .101. Heaney was transported by ambulance to the Gunderson Lutheran Medical Center in LaCrosse, Wisconsin, the closest available hospital for treatment of his injuries.

Shortly thereafter, a different Minnesota officer arrived at the medical center and read Heaney Minnesota's implied consent advisory, including the portion indicating that the officer had probable cause to believe Heaney had violated Minnesota's

criminal vehicular homicide law. The officer then requested a blood sample for testing. Heaney initially consented to give a blood sample, but later withdrew his consent. The officer indicated his belief that he had a right to take a blood sample despite Heaney's refusal. Heaney eventually acquiesced to a urine test, which was administered nearly three hours after the time of the accident. Analysis of the urine showed that Heaney's alcohol concentration at the time of the test was .08.

The Minnesota officer later learned that before he arrived at the medical center and within two hours of the accident the medical center had obtained a blood sample from Heaney. Following Wisconsin statutory procedures, the officer then completed a request for production of certain items, along with a supporting affidavit, seeking a copy of Heaney's medical records and the blood sample. A deputy LaCrosse County Attorney filed this request at the LaCrosse County District Court. The court then issued a subpoena for documents as well as an order requiring the medical center to release the requested documents and the blood sample. The Minnesota officer served the subpoena on the medical center, after which Heaney's medical records and the blood sample were given to the officer. The report showed that Heaney's blood alcohol concentration was .144 within two hours of the accident. This result was independently confirmed at the Bureau of Criminal Apprehension lab in St. Paul, Minnesota.

On May 1, 2002, a complaint was filed in Houston County District Court charging Heaney with four counts of criminal vehicular operation resulting in death under Minn.Stat. § 609.21, subd. 1 (2002), as well as four counts of criminal vehicular operation resulting in substantial bodily harm under Minn.Stat. § 609.21, subd. 2 (2002). Both crimes require proof that the defendant drove while having an alcohol concentration of .10 or more, measured within two hours of the time of driving. At an omnibus hearing, Heaney sought to suppress the blood-alcohol evidence on the grounds that the evidence was obtained in violation of Minnesota's physician-patient privilege statute, Minn.Stat. § 595.02, subd. 1(d). The court granted his motion to suppress the hospital and laboratory blood-alcohol evidence because the evidence was obtained in violation of Minnesota's physician-patient privilege. The court of appeals affirmed, holding that under either lex fori or a "better rule of law" analysis, the district court correctly applied Minnesota's physician-patient privilege statute. *State v. Heaney*, 676 N.W.2d 698 (Minn.App.2004).

The state sought review on the issue of whether Heaney's blood-alcohol evidence is admissible in Minnesota where the evidence was properly obtained under Wisconsin law but Minnesota's physician-patient privilege statute would preclude its admission at trial. We reverse the decision of the court of appeals and remand for trial.

## I.

When reviewing a pretrial order suppressing evidence where the facts are not in dispute, we may conduct an independent review and determine, as a matter of law, whether the district court erred in suppressing the evidence. *State v. Harris*, 590 N.W.2d 90, 98 (Minn.1999); *State v. Othoudt*, 482 N.W.2d 218, 221 (Minn.1992). The construction of statutes and rules is subject to de novo review. *State v. Azure*, 621 N.W.2d 721, 723 (Minn.2001). The existence of a privilege is also a question of law, which we review de novo. *State v. Gianakos*, 644 N.W.2d 409, 415 (Minn. 2002).

The state argues that *State v. Lucas*, 372 N.W.2d 731 (Minn.1985), provides the rule of law for this case. In *Lucas*, the telephone conversation of two parties was tape-recorded in Wisconsin. One party had not consented to the taping of the conversation. The state sought to introduce the tape in Minnesota. We had held in *State v. Bellfield*, 275 N.W.2d 577 (Minn. 1978), that where one of two parties consented, no warrant was required under either the federal or state electronic surveillance statutes to tape a telephone conversation, and the recordings were admissible. In contrast, based on Wisconsin's electronic surveillance statute, the Wisconsin court in *State ex rel. Arnold v. County Court of Rock County*, 51 Wis.2d 434, 187 N.W.2d 354 (1971), held that a tape-recorded telephone conversation based on a one-party consent was not admissible in evidence. With this background, the court in *Lucas* adopted an exclusionary rule analysis, rejected a traditional conflict of laws approach, and held the tape-recorded statement to be admissible in Minnesota. In doing so, we cited secondary sources and case law from other states concerning the admission of evidence obtained out of state where the evidence was illegally obtained under the laws of either or both the forum and search jurisdictions.

Both the district court and court of appeals found the exclusionary rule analysis of *Lucas* to be inapplicable to the facts of the present case. The district court rejected the *Lucas* analysis, stating that in *Lucas* the criminal activity occurred in Wisconsin, whereas in the present case the criminal activity occurred in Minnesota. We do not find this distinction persuasive. In *Lucas*, as in the present case, the evidence was seized in Wisconsin and the location of the criminal activity did not control the evidentiary question. The court of appeals took a different approach, distinguishing *Lucas* on the basis that *Lucas* involved the violation of a constitutional right of the defendant, whereas in the present case only a statutory right is implicated. We do not find such a distinction between *Lucas* and the instant case. The *Lucas* court did not conclude that any constitutional rights were implicated, only the meaning of a Wisconsin statute concerning surveillance techniques. *Id.* at 737.

■ Nevertheless, we agree with the lower courts that the exclusionary rule analysis in *Lucas* need not be applied in this case. Where the police have engaged in illegal conduct in obtaining evidence or where, as in *Lucas*, police conduct was lawful but a statute concerning privacy interests renders the evidence inadmissible, an exclusionary rule analysis is appropriate. But where, as here, there is neither conduct by police that is illegal under the statutes or constitution of either the forum or search jurisdictions, nor any statute or constitutional principle in the search jurisdiction that would make the evidence inadmissible, an exclusionary rule analysis does little to determine which state's law should be applied.[1] An exclusionary rule analysis alone does not take into account important policy considerations such as those discussed in Part II of this opinion. A traditional conflict of laws analysis, therefore, is appropriate to determine the admissibility of evidence obtained in another state in a criminal case.

II.

■ We now proceed to the conflict of

---

1. We do not reach the question of whether it was proper for a Minnesota peace officer to go outside Minnesota's borders and attempt to compel a blood sample under Minnesota law. In this case, the sample was obtained using Wisconsin's procedure inside Wisconsin's borders and our holding is limited to these facts.

laws question.[2] In the present case, the Minnesota and Wisconsin physician-patient privilege rules directly conflict. Minnesota's physician-patient privilege has its genesis in Minn.Stat. § 595.02, subd. 1(d) (2002):

A licensed physician * * * shall not, without the consent of the patient, be allowed to disclose any information or any opinion based thereon which the professional acquired in attending the patient in a professional capacity, and which was necessary to enable the professional to act in that capacity.

A blood sample taken for treatment purposes is information acquired by the physician that is necessary to enable him to act in a professional capacity and is included in the privilege. *See State v. Staat*, 291 Minn. 394, 400, 192 N.W.2d 192, 197 (1971) (holding that the statute's broad language encompasses physical articles, verbal communications, and any other knowledge obtained by the physician through his observation and examination). Thus, under Minnesota's physician-patient privilege statute, Heaney's blood-alcohol evidence from the hospital would be inadmissible.

Wisconsin's privilege statute, on the other hand, excepts the type of evidence at issue in the present case from privileged status. Wis. Stat. § 905.04, subd. 2 (2001–02) sets out Wisconsin's general rule of

privilege: "A patient has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made or information obtained or disseminated for purposes of diagnosis or treatment of the patient's physical, mental, or emotional condition * * *." However, the statute goes on to state "[t]here is no privilege in trials for homicide when the disclosure relates directly to the facts or immediate circumstances of the homicide." *Id.*, subd. 4(d) (2001–02). Further, "[t]here is no privilege concerning the results of or circumstances surrounding any chemical tests for intoxication or alcohol concentration." *Id.*, subd. 4(f). Either exception would apply to bring the medical center's disputed blood-alcohol evidence into court.

■ To resolve this conflict of laws, the court of appeals applied the doctrine of lex fori (the law of the forum). The court concluded that since physician-patient privilege statutes are evidentiary rules, and evidentiary rules are matters of procedure, they are governed by the laws of the forum state. *State v. Heaney*, 676 N.W.2d at 707 (citing *Jones v. Chicago, St. P., M. & O. Ry. Co.*, 80 Minn. 488, 491, 83 N.W. 446, 447 (1900)). Thus, the court concluded the evidence is inadmissible under Minnesota's statute. The court went on to

**2.** Both parties make arguments regarding *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), and *State v. Oevering*, 268 N.W.2d 68 (Minn.1978). These cases, due to the natural exigency involved in obtaining blood-alcohol evidence, recognize the power of a peace officer to compel a blood sample from a driver where there is probable cause to believe the driver has violated a criminal vehicular operation law. These cases do not, however, create a general exception to Minnesota's physician-patient privilege statute such that there is no conflict of laws between Minnesota and Wisconsin in the present case. *Schmerber* and *Oevering* balance the state's prosecutorial in-

terest and the need to quickly gather blood-alcohol evidence against the driver's right to privacy. They say nothing regarding the entirely distinct policy of the physician-patient privilege statute, which is to promote unfettered communications between patient and doctor to facilitate proper medical diagnosis and treatment. *State v. Staat*, 291 Minn. 394, 397, 192 N.W.2d 192, 195–96 (1971). Despite the fact that the theory behind the physician-patient privilege statute is highly speculative, *see Snyker v. Snyker*, 245 Minn. 405, 408, 72 N.W.2d 357, 359 (1955), the policies of *Schmerber* and *Oevering* are simply inapposite to the question of medical privilege.

say that even if the physician-patient privilege is more akin to a rule of substantive law than a rule of procedure, under Minnesota's "better rule of law" choice of substantive law doctrine, the Minnesota physician-patient privilege is the better rule. *Heaney,* 676 N.W.2d at 707 (citing *Milkovich v. Saari,* 295 Minn. 155, 164, 203 N.W.2d 408, 413 (1973) (holding that, in the context of civil tort actions, Minnesota courts will look to the "better rule of law" rather than lex loci, the law of the place)). We believe that neither lex fori nor the "better rule of law" adequately weighs the various evidentiary concerns that arise in a privilege context.

■■■ Privileges are not like other rules of evidence and hold a unique place in the law. A question of privilege is an evidentiary question, *Gianakos,* 644 N.W.2d at 415, but it has a substantive component. Unlike other rules of evidence that are concerned solely with the reliability of evidence and its ability to guide the court to the truth, privileges are an impediment to truth-finding. *Staat,* 291 Minn. at 397, 192 N.W.2d at 196. They are created to substantively protect a particular type of relationship deemed valuable to society in general. *Id.* Professor Jack B. Weinstein highlights the difference between a privilege and an "ordinary" rule of evidence:

> Rules of evidence are designed to provide better answers to questions of fact than could be obtained without the rules. * * * [This] does not apply to privileges. For in this area, government weighs the value of better answers to litigated questions of fact against other public policies. Where it decides that a privilege is to be recognized * * *, it fosters a policy unrelated to litigation at the price of worse answers to questions of fact.

Jack B. Weinstein, *Recognition in the United States of the Privileges of Another*

*Jurisdiction,* 56 Colum. L. Rev. 535, 535 (1956).

The "unrelated" policy of the physician-patient privilege is to promote unfettered communication between patient and physician. *Staat,* 291 Minn. at 397, 192 N.W.2d at 195–96. The court of appeals' application of lex fori fails to recognize that a privilege is fundamentally different from other evidentiary rules in that it has this substantive aspect. Applying lex fori to a conflict of privileges treads heavily on the prerogative of the foreign state to enact a substantive rule to protect what it considers socially valuable, confidential communications. On the other hand, application of lex loci or its replacement, the "better rule of law" analysis, does not adequately weigh the procedural aspect, that recognition of a privilege always leads to "worse answers to questions of fact" and harms the interest of the forum.

■■ We note that *Milkovich v. Saari,* the case that replaced the doctrine of lex loci with the "better rule of law" analysis, was a civil tort action for negligence involving an automobile accident, not a criminal case. 295 Minn. 155, 203 N.W.2d 408. In adopting the new "better rule" analysis, the *Milkovich* court cited a lengthy passage from Professor Albert A. Ehrenzweig, *'False Conflicts' and the 'Better Rule': Threat and Promise in Multistate Tort Law,* 53 Va. L. Rev. 847, 855 (1967), giving the rationale for the new approach: "In cases involving foreign elements, however, this consideration [of respect for certainty and the parties' expectations] * * * generally is less relevant, and the path is open for the courageous judge to prepare the ground for a domestic reform by open preference for 'better' foreign solutions." *Milkovich,* 295 Minn. at 168, 203 N.W.2d at 415. While reasonable in the context of tort law, the criminal setting presents significant differences that make the *Milko-*

*vich* rule inappropriate. In the criminal context, the interest in better answers to factual questions is significantly heightened due to the possible liberty deprivation faced by the defendant and the proof beyond a reasonable doubt standard. Minnesota law reflects these differences. The physician-patient privilege has been applied domestically in criminal cases only by judicial assumption, and is generally not applied where its "effect would be to bar evidence in furtherance of crime." *Staat,* 291 Minn. at 399 n. 2, 192 N.W.2d at 196 n. 2. Because applying a foreign privilege will always lead to worse answers to questions of fact, a choice of law rule regarding privileges in the criminal context must sufficiently cabin the trial court's discretion. The *Milkovich* "better rule of law" approach, with its premise that foreign law might be imported into the forum to pressure domestic reform, does not comport well with the special concerns presented by the criminal setting. Such weighty balancing of societal interests against the interest in having the best answers to factual questions in criminal cases ought to be left to the legislature.[3]

■ The Restatement provides a conflicts rule unique to privileges that balances all of the foregoing considerations. The Restatement establishes two prongs:

(1) Evidence that is not privileged under the local law of the state which has the most significant relationship with the communication will be admitted, even though it would be privileged under the local law of the forum, unless the admission of such evidence would be contrary to the strong public policy of the forum.

(2) Evidence that is privileged under the local law of the state which has the most significant relationship with the communication but which is not privileged under the local law of the forum will be admitted unless there is some special reason why the forum policy favoring admission should not be given effect.

Restatement (Second) of Conflict of Laws § 139 (1971). The state of "most significant relationship with the communication" will be the state where the communication took place, unless there is a prior relationship between the parties. *Id.* at cmt. e. If there is a prior relationship between the parties, the state where the relationship is centered has the most significant relationship, unless the state where the communication took place has "substantial contacts" with the parties and the transaction. *Id.*

By focusing the inquiry on the state with the most significant relationship with the communication, the Restatement approach recognizes both the substantive nature of the privilege statute and the interest of the state where the communication took place in facilitating unfettered communications within such privileged relationships. The two prongs of the test also sufficiently appreciate the procedural nature of the privilege statute and its effect on the forum, possibly resulting in worse answers to questions of fact. Under the first prong, evidence will always be admitted, absent a strong public policy in the forum, if it is admissible in the state of most significant relationship with the communication. Under the second prong, evidence

---

3. Where exceptions to a statutory privilege are concerned, the court "prefer[s] * * * to defer a policy determination * * * to the legislature." *Gianakos,* 644 N.W.2d at 420. This court has ultimate authority over evidentiary questions including privileges under the Minnesota Constitution, *State v. Erickson,* 589 N.W.2d 481, 485 (Minn.1999), but generally defers to statutory evidentiary rules as a matter of comity. *See State v. Lanam,* 459 N.W.2d 656, 658 (Minn.1990).

will more than likely be admitted if the forum favors admission and the state of most significant relationship does not. Evidence will not be admitted where it is privileged in both the forum state and the state of most significant relationship.

The Restatement rule has been adopted in Iowa, Washington, and Illinois in cases involving out-of-state seizure of privileged blood-alcohol evidence. The Iowa Supreme Court specifically adopted the Restatement approach in a case with facts nearly identical to the present case. *See Iowa v. Eldrenkamp*, 541 N.W.2d 877 (Iowa 1995). In that case, the defendant was driving a motorcycle under the influence of alcohol with a passenger on board. The motorcycle struck a reflector post on the Iowa side of a causeway connecting Iowa and Illinois, throwing both driver and passenger from the vehicle. The driver was taken to a hospital across the border in Illinois. Illinois police obtained a search warrant and received an inculpatory blood sample from the Illinois hospital taken for treatment purposes, and handed it over to Iowa authorities. Illinois does not recognize a physician-patient privilege in homicide cases, whereas Iowa does. *Id.* at 881. The Iowa court specifically adopted Restatement (Second) of Conflict of Laws § 139(1), concluded that Illinois was the state of most significant relationship with

the communication, and held the blood test results admissible under Illinois law. *Eldrenkamp*, 541 N.W.2d at 881. *Accord Washington v. Donahue*, 105 Wash.App. 67, 18 P.3d 608 (2001) (applying Oregon law to admit blood-alcohol evidence where vehicular homicide occurred in Washington but blood sample was drawn in Oregon for treatment purposes); *People v. Allen*, 336 Ill.App.3d 457, 271 Ill.Dec. 175, 784 N.E.2d 393 (2nd Dist.2003) (holding Iowa privilege law precluding admission applicable where automobile accident occurred in Illinois but blood sample was drawn for treatment purposes in Iowa, but admitting the evidence nonetheless because no special reason existed why the Illinois policy favoring admission should not have been given effect). Other jurisdictions have also seen fit to apply the Restatement approach in cases involving other forms of privilege.[4]

For these reasons, we conclude that conflict of laws related to the recognition of the privileges of foreign jurisdictions will be resolved under the "significant relationship with the communication" approach outlined in Restatement (Second) of Conflict of Laws § 139.

■ Applying the Restatement approach to this case, the state with the most significant relationship to the communication is the state where the communication

---

4. *See, e.g., Indep. Petrochemical v. Aetna Cas. & Sur. Co.*, 117 F.R.D. 292, 295 (D.D.C.1987) (holding that letters from insured's attorney to accounting firm not privileged under the law of the state with the most significant relationship to the communication and compelling production); *Anas v. Blecker*, 141 F.R.D. 530 (M.D.Fla.1992) (holding that Illinois law had most significant relationship to communications between defendant appraiser and association of realtors during a disciplinary hearing held in Illinois and finding a special reason why forum policy favoring admission should give way to realtor association's strict confidentiality policy); *Ford Motor Co. v. Leggat*, 904 S.W.2d 643, 647 (Tex.

1995) (holding that the law of Michigan rather than the forum applied to manufacturer's claim of attorney-client privilege in a products liability suit because the communication took place in Michigan and therefore Michigan had most significant relationship to communication); *Consolidation Coal Co. v. Bucyrus–Erie Co.*, 89 Ill.2d 103, 59 Ill.Dec. 666, 432 N.E.2d 250 (1982) (applying significant relationship test to attorney-client and work-product privileges and determining that special Illinois policy favoring admission outweighed Wisconsin's contrary approach where an excavation device designed and built by Wisconsin defendant caused mine collapse in Illinois).

occurred unless there is a prior relationship between the parties to the communication. *Id.* § 139 cmt. e. Here, the communication occurred in Wisconsin, the state with the most significant relationship to the communication, and there was no prior relationship between the hospital and Heaney. Furthermore, there is no strong public policy reason in Minnesota for excluding the evidence. On the contrary, the state's interest in prosecuting those who violate the state's criminal vehicular operation laws counsels admission of the evidence. *See, e.g., State v. Oevering,* 268 N.W.2d 68 (Minn.1978) (holding that the natural exigency related to the collection of blood-alcohol evidence justifies a non-consensual blood-alcohol test when a Minnesota peace officer has probable cause to believe that criminal vehicular operation has occurred); *State v. Lee,* 585 N.W.2d 378 (Minn.1998) (holding that removal of a blood sample without consent when a Minnesota peace officer has probable cause to believe that the sample will yield evidence of gross misdemeanor criminal vehicular operation). Thus, the local law of Wisconsin applies and the evidence is admissible in Minnesota. We hold that, under the "most significant relationship with the communication" rule, the Wisconsin blood-alcohol evidence is admissible in Heaney's trial in Minnesota.

Reversed and remanded.

ANDERSON, G. BARRY, J., not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.