**STATE of Minnesota, Respondent,**

v.

**Denise M. POETSCHKE, Appellant.**

**No. A07–1323.**

Court of Appeals of Minnesota.

June 10, 2008.

Lori Swanson, Attorney General, St. Paul, MN; and Douglas L. Johnson, City of Coon Rapids, Assistant City Attorney, Coon Rapids, MN, for respondent.

Faison T. Sessoms, Jr., Minneapolis, MN, for appellant.

Considered and decided by
SCHELLHAS, Presiding Judge;
KLAPHAKE, Judge; and HALBROOKS, Judge.

## OPINION

HALBROOKS, Judge.

Appellant Denise M. Poetschke challenges her conviction of third-degree driving while impaired (DWI) in violation of Minn.Stat. § 169A.20, subd. 1(1), (5) (2004). Appellant argues that the district court erred in denying her motion to suppress her medical records on the basis of her physician-patient privilege. Because appellant did not waive her physician-patient privilege and because the implied-consent statute does not overcome this privilege, we reverse.

## FACTS

This appeal arises from appellant's conviction following a stipulated-facts *Lothenbach* procedure. Appellant was involved in a single-vehicle accident in Coon Rapids on February 20, 2006. Coon Rapids Police Officer Pantelis responded to the accident scene. When Officer Pantelis approached the vehicle, appellant was in the driver's seat, and he saw that her eyes were bloodshot and watery. Appellant was unable to provide proof of insurance and appeared to the officer to be dazed and confused. Officer Pantelis also detected the odor of alcohol. He conducted a preliminary breath test, which appellant failed.

Because appellant was injured in the accident, an ambulance was called. Before the ambulance arrived, Officer Pantelis read her the implied-consent advisory, and appellant agreed to submit to testing. The ambulance took appellant to Mercy Hospital, where her blood was drawn as part of the diagnosis of and treatment for her injuries. Officer Pantelis testified that he asked appellant if she were willing to take a blood test because she was unable to take a breath test due to her injuries. Appellant gave her consent to a blood test.

Appellant was treated in the hospital emergency room and then taken for x-rays. Officer Pantelis subsequently asked her if she were still willing to provide a blood sample. When appellant said that she was willing, Officer Pantelis directed a medical technician to draw a second blood sample. But as a result of her injuries, appellant's veins had collapsed; despite multiple attempts, the medical technician was unable to get a second blood sample.

Officer Pantelis subsequently discarded the implied-consent-advisory form because he believed that he could not pursue DWI charges without the blood sample.

On March 6, 2006, Coon Rapids police obtained a search warrant for appellant's medical records and the blood sample taken by the hospital. Detective Westburg of the Coon Rapids Police Department gave Mercy Hospital the search warrant and was informed that it would take a day to obtain the records. When Detective Westburg returned, he was told that the hospital had destroyed the blood sample, but he was given records relating to appellant's medical treatment. The records showed that appellant's alcohol concentration was .152 when tested on February 20, 2006. Appellant was charged with two counts of third-degree DWI in violation of Minn. Stat. § 169A.20, subd. 1(1), (5) (2004); one count of violation of a restricted driver's license in violation of Minn.Stat. § 171.09(b)(1) (2004)[1]; and one count of operating a motor vehicle without proof of insurance in violation of Minn.Stat. § 169.791, subd. 2 (2004).

Appellant moved to suppress her blood-test results and argued at an omnibus hearing on September 26, 2006, that use of the test results violated her physician-patient privilege. The district court denied appellant's motion. Appellant waived her right to a jury trial and proceeded to trial on stipulated facts pursuant to *State v. Lothenbach*, 296 N.W.2d 854 (Minn.1980). Appellant was found guilty of all charges and sentenced to 365 days in jail, with 335 days stayed for four years and the executed time to be spent on home electronic monitoring. In addition, appellant was or-

dered to pay a $50 fine. This appeal follows.

## ISSUE

Did the district court err in denying appellant's motion to suppress her blood-test results?

## ANALYSIS

■ Appellant argues that the records of the blood test taken at Mercy Hospital are inadmissible in her criminal prosecution because she did not waive her physician-patient privilege concerning the test results. The district court disagreed with appellant's argument and concluded that because appellant gave oral consent to a second blood test that was not rescinded, she waived the privilege.

In reviewing a pretrial order denying a motion to suppress evidence when the underlying facts are not in dispute, an appellate court may conduct an independent review and determine, as a matter of law, if the district court erred in refusing to suppress the evidence. *State v. Heaney*, 689 N.W.2d 168, 171 (Minn.2004). The construction of statutes and rules as well as the existence of a privilege are questions of law, which an appellate court reviews de novo. *Id.*

■ Minnesota's physician-patient privilege has its roots in Minn.Stat. § 595.02, subd. 1(d) (2004). *Id.* at 173. The statute states that

[a] licensed physician or surgeon, dentist, or chiropractor shall not, without the consent of the patient, be allowed to disclose any information or any opinion based thereon which the professional acquired in attending the patient in a pro-

---

**1.** Appellant's driver's license was revoked on January 30, 1999, for test refusal. She was convicted of test refusal on April 21, 1999. As a result of her conviction, her driver's license at the time of this accident included a restriction that any use of alcohol or drugs invalidated the license.

fessional capacity, and which was necessary to enable the professional to act in that capacity; after the decease of the patient, in an action to recover insurance benefits, where the insurance has been in existence two years or more, the beneficiaries shall be deemed to be the personal representatives of the deceased person for the purpose of waiving this privilege, and no oral or written waiver of the privilege shall have any binding force or effect except when made upon the trial or examination where the evidence is offered or received.

Minn.Stat. § 595.02, subd. 1(d). "The purpose of the privilege is to encourage patients' full disclosure of information, which will enable medical providers to extend the best medical care possible." *State v. Gillespie*, 710 N.W.2d 289, 297 (Minn.App. 2006), *review denied* (Minn. May 16, 2006). Designed solely for the protection of the patient and his or her treatment, a party may assert the privilege to prohibit access to medical records as well as to the medical professionals who provide treatment. *Id.; see also Muller v. Rogers*, 534 N.W.2d 724, 727 (Minn.App.1995) (stating that a party is entitled to assert the physician-patient privilege to limit discovery into medical records). "Unlike other rules of evidence that are concerned solely with the reliability of evidence and its ability to guide the court to the truth, privileges are an impediment to truth-finding. They are created to substantively protect a particular type of relationship deemed valuable to society in general." *Heaney*, 689 N.W.2d at 174 (citation omitted). In creating a statutory privilege, the legislature has made a decision to protect a policy that it deems important at the expense of accurate answers to fact questions. *Id.*

The state concedes that medical records traditionally fall within the scope of the physician-patient privilege. *See, e.g., State v. Blom*, 682 N.W.2d 578, 617 (Minn.2004) (stating that medical records generally fall under the physician-patient privilege but that a defendant can also waive this privilege); *State v. Staat*, 291 Minn. 394, 398–400, 192 N.W.2d 192, 196–97 (1971) (discussing the statutory requirements to determine whether the physician-patient privilege applies to a particular piece of evidence). Because there is no challenge to the application of the physician-patient privilege, the focus of our review is whether appellant's implied consent or oral consent to a second blood test waived that privilege. If appellant waived the privilege, the district court properly denied appellant's motion to suppress.

Appellant argues that her consent to a second blood test did not waive her physician-patient privilege to the first test results. Based on the language of *Heaney*, appellant contends that her physician-patient privilege is not overcome by the implied-consent law. The district court disagreed, stating that because appellant "did not withdraw her consent although she was conscious and alert at the hospital and therefore capable of indicating her wishes[,]" she implicitly waived the privilege by her actions. In conducting its analysis, the district court distinguished *Heaney* from the present case and noted a series of unpublished cases from this court to support its conclusion that appellant waived her privilege.[2]

In *Heaney*, the defendant was involved in a single-vehicle accident in Houston County. 689 N.W.2d at 170. Heaney ad-

---

**2.** The district court cited *Lundebreck v. Comm'r of Pub. Safety*, No. C8–01–164 (Minn. App. Sept.25, 2001), and *State v. Haugen*, No. C7–99–1739 (Minn.App. June 27, 2000), in support of its decision. As unpublished cases, they are not precedential. Minn.Stat. § 480A.08, subd. 3(c) (2006).

mitted that he and his friends had been drinking earlier that evening, and the responding officer administered a portable breath test that Heaney failed. *Id.* Because he sustained injuries in the accident, Heaney was transported to the closest available hospital, which happened to be in LaCrosse, Wisconsin. *Id.*

At the hospital, Heaney's blood was drawn within two hours after the accident. *Id.* at 171. A second Minnesota officer arrived and read Heaney the implied-consent advisory, including the portion that indicated that the officer had probable cause to believe that Heaney had violated Minnesota's criminal-vehicular-homicide law. *Id.* at 170–71. In response, Heaney initially consented to give a blood sample but subsequently withdrew his consent. *Id.* at 171. Despite his refusal to give the sample, the officer asserted that he had a right to a blood sample. *Id.* Heaney eventually agreed to a urine test that showed an alcohol concentration of .08 approximately three hours after the accident. *Id.*

The Minnesota officer who administered the implied consent later learned of the blood test taken by the hospital. *Id.* Following the statutory procedures required in Wisconsin, the officer completed a request for production of the blood test and medical records and filed the request in the LaCrosse County District Court. *Id.* The LaCrosse County District Court issued a subpoena for Heaney's medical records and the blood sample. *Id.* After returning to the hospital, the officer was given Heaney's blood and medical records, which showed Heaney had an alcohol concentration of .144 within two hours after the accident. *Id.*

Heaney was subsequently charged in Houston County with criminal vehicular operation resulting in death and criminal vehicular operation resulting in substantial bodily harm. *Id.* Both crimes required proof that the defendant was operating a vehicle with an alcohol concentration of .10 or more within two hours after driving. *Id.; see also* Minn.Stat. § 609.21, subds. 1, 2 (2002). Heaney sought to suppress the alcohol-concentration evidence on the ground that it was obtained in violation of the Minnesota physician-patient-privilege statute. *Id.* The district court granted Heaney's motion to suppress, and the state appealed to this court. We held that, under a choice-of-law analysis, the district court correctly applied Minnesota's physician-patient-privilege statute as opposed to the Wisconsin law. *Id.; see also State v. Heaney,* 676 N.W.2d 698 (Minn.App.2004), *rev'd,* 689 N.W.2d 168 (Minn.2004). The state petitioned the Minnesota Supreme Court for review, arguing that the evidence was properly obtained under Wisconsin law and should be admissible for use by the prosecution in Minnesota. *Heaney,* 689 N.W.2d at 171. The supreme court granted review.

The supreme court examined the relevant Minnesota and Wisconsin privilege statutes and concluded that the "significant relationship with the communication" approach from the Restatement (Second) of Conflict of Laws § 139 should apply to the choice-of-law analysis, which led to application of the Wisconsin statute. *Id.* at 175–77 (quotation marks omitted). Because the Wisconsin privilege statute contains an exception for the type of evidence at issue that the Minnesota statute does not, the supreme court concluded that the alcohol-concentration results were admissible. *Id.* at 173, 177.[3]

---

**3.** The Wisconsin statute stated "[t]here is no privilege in trials for homicide when the disclosure relates directly to the facts or immedi-

ate circumstances of the homicide." Wis. Stat. § 905.04(4)(d) (2001–02). In addition, the Wisconsin statute had a provision which

But the supreme court clearly stated that "under Minnesota's physician-patient privilege statute, Heaney's blood-alcohol evidence from the hospital would be inadmissible." *Id.* at 173. While not essential to the holding in *Heaney*, we find the conclusion of the supreme court applicable and persuasive here. *See Brink v. Smith Cos. Constr., Inc.*, 703 N.W.2d 871, 877–78 (Minn.App.2005) ("Judicial dictum involves a court's expression of its opinion on a question directly involved and argued by counsel though not entirely necessary to the decision" and is "entitled to much greater weight than mere obiter dictum and should not be lightly disregarded." (quotations and citations omitted)), *review denied* (Minn. Dec. 21, 2005). In contrast to its Wisconsin counterpart, Minn.Stat. § 592.02, subd. 1(d), contains no exception for alcohol-concentration test results. *Compare* Wis. Stat. § 905.04(4)(f), *with* Minn.Stat. § 592.02, subd. 1(d). Minnesota law establishes that the only testing impliedly consented to by a driver is one administered at the direction of a peace officer. Minn.Stat. § 169A.51, subd. 1(a) (2004). Due to appellant's physical condition, there was no such test successfully administered here.

The state argues that *Heaney* is distinguishable because, in contrast to this case, the defendant in *Heaney* later withdrew his consent. 689 N.W.2d at 171. But the supreme court makes no mention of any relevance attached to the defendant's subsequent withdrawal of consent in applying Minnesota's physician-patient-privilege law. *Id.* at 172–77. Instead, the case clearly states that when the privilege applies, it acts to exclude the evidence, despite the fact that it may act as "an impediment to truth-finding." *Id.* at 174 (citing

*Staat*, 291 Minn. at 397, 192 N.W.2d at 196). Unlike the Wisconsin physician-patient-privilege statute, Minnesota's law has no exception for alcohol-concentration results. And while the state argues that appellant's conduct creates an exception, without language in the statute to support that argument, it is best left for the legislature. *See Sefkow v. Sefkow*, 427 N.W.2d 203, 210 (Minn.1988) ("The function of the court of appeals is limited to identifying errors and then correcting them.").

The state asks this court to look at the purpose of the implied-consent statute in light of the privilege's purpose. Arguing that appellant's actions imply a waiver, the state suggests that it is unreasonable for appellant to suggest that release of her medical results here inhibited her ability to be candid with her physician. But appellant has not waived the privilege by placing her medical condition at issue. *See State v. Gore*, 451 N.W.2d 313, 318 (Minn. 1990) (a defendant who testifies about his medical condition impliedly waives the ability to object to physician's conflicting testimony on the basis of physician-patient privilege); *Younggren v. Younggren*, 556 N.W.2d 228, 233 (Minn.App.1996) (a party can waive the physician-patient privilege by placing one's medical condition in controversy); *State v. Kunz*, 457 N.W.2d 265, 267 (Minn.App.1990) (the consented-to presence of a police officer during a medical examination rendered observations made by the physician non-privileged), *review denied* (Minn. Aug. 23, 1990). Admittedly, appellant's physical inability to provide a second blood sample is a result of her own conduct, but the legislature has created a clear policy that prefers protection of privacy over truth-finding. *Heaney*, 689 N.W.2d at 174. As an error-

excepts alcohol-concentration test results: "There is no privilege concerning the results of or circumstances surrounding any chemi-

cal tests for intoxication or alcohol concentration." *Id.,* (4)(f).

correcting court; it is not for us to conclude that the policy is improper. *Sefkow,* 427 N.W.2d at 210.

## DECISION

The Minnesota physician-patient-privilege statute contains no exception for use of alcohol-concentration test results in a criminal prosecution. Because appellant did not waive her physician-patient privilege, the alcohol-concentration test result taken in the course of appellant's medical treatment and not at the request of the officer pursuant to Minn.Stat. § 169A.51, subd. 1(a) (2004), is not admissible in her criminal prosecution. The district court therefore erred in denying appellant's motion to suppress.

**Reversed.**