GILDEA, Chief Justice (dissenting).
Minnesotans will be surprised to learn that blood samples and other biological specimens they provide to their doctors during medical treatment are not protected by the physician-patient privilege, and that such samples and specimens can be given to police without their consent. But that is the conclusion the majority reaches in this case. Specifically, the majority holds that a blood sample taken from appellant Atwood while he was a patient receiving emergency medical treatment is not "information" and therefore is not protected by the physician-patient privilege, Minn. Stat. § 595.02, subd. 1(d) (2018). Because the majority's decision departs from our precedent, I dissent.
In State v. Heaney , 689 N.W.2d 168 (Minn. 2004), we held that "a blood sample taken for treatment purposes is information acquired by the physician that is necessary to enable him to act in a professional capacity and is included in the privilege." Id. at 173 (emphasis added). Consistent with Heaney , the blood sample at issue in this case should be protected by the physician-patient privilege.[1]
The majority concludes that our determination in Heaney was dicta and therefore is not controlling. I disagree.
In Heaney , the defendant was charged with alcohol-related criminal vehicular operation in connection with a fatal accident in Houston County. 689 N.W.2d at 170-71. Due to injuries sustained during the accident, the defendant was transported by ambulance to a nearby hospital, which was across the border in Wisconsin. Id. at 170. Hospital staff drew a blood sample from the defendant during emergency medical treatment, and law enforcement used a subpoena[2] to acquire the blood sample *636 from the hospital without the defendant's consent. Id. at 170-03. The blood sample in Heaney was then sent to the Minnesota BCA for testing, and the test result was used to file criminal charges against the defendant. Id.
In the district court, the defendant moved to suppress the blood sample and BCA test result obtained from the blood sample on multiple grounds, including that the blood sample was protected by the physician-patient privilege and therefore should not have been given to law enforcement by the hospital. Omnibus Brief for Defendant at 5-8, State v. Heaney , No. K5-02-262 (Houston Cty. Dist. Ct. filed Oct. 15, 2002). The district court in Heaney agreed that the blood sample was protected by Minnesota's physician-patient privilege and suppressed the sample as well as the BCA test result. State v. Heaney , No. K5-02-262, Order at 3 (Houston Cty. Dist. Ct. filed Dec. 19, 2002). The court of appeals affirmed. State v. Heaney , 676 N.W.2d 698, 708-09 (Minn. App. 2004) ("The district court did not err by excluding Heaney's medical records, including the blood plasma sample and the alcohol concentration testing on the sample, under the physician-patient privilege.").
On appeal, we considered whether the blood sample was protected by the physician-patient privilege from being acquired by law enforcement, tested by the BCA, and used to prosecute the individual for a crime in Minnesota. Heaney , 689 N.W.2d at 171. In order to answer this question, we had to decide whether to apply the Minnesota statutory privilege or the Wisconsin statutory privilege. Id. at 172-73. Thus, we had to first determine whether there was in fact a conflict between the privilege laws of Minnesota and Wisconsin.
As part of the conflict-of-laws analysis, we cited State v. Staat[3] as controlling Minnesota authority and held that "a blood sample taken for treatment purposes is information acquired by the physician that is necessary to enable him to act in a professional capacity and is included in the privilege." Heaney , 689 N.W.2d at 173 (emphasis added). In other words, under Minnesota law, the sample and test result *637 were inadmissible evidence because of the privilege. In contrast, the evidence was admissible under Wisconsin law. Because there was a conflict, we engaged in a conflict-of-laws analysis, and based on that analysis, we applied the Wisconsin statutory privilege and reversed. Id. 176-77.
The majority attempts to minimize our determination in Heaney by concluding that the definition of "information" was not essential to the analysis or holding in the case. I disagree with the majority that our conclusion regarding the admissibility of the blood sample under the Minnesota physician-patient privilege was dicta.
We could not have decided the issue presented in Heaney without engaging in the conflict-of-laws analysis, and part of the conflict-of-laws analysis included our holding that the blood sample was protected by the Minnesota physician-patient privilege. Specifically, to determine whether there was a conflict, we had to first determine the scope of each jurisdiction's privilege statute, and we concluded, based on Staat , that the sample would not be admissible under the Minnesota statute. Heaney , 689 N.W.2d at 173. With a conflict present, we then had to decide which law to apply. Id. at 173-74. Because our conclusion that the blood sample was protected by the Minnesota physician-patient privilege was necessary to resolve the conflict-of-laws question, our analysis of the type of information protected by the Minnesota privilege was necessary to the outcome of Heaney . Therefore, the analysis was not dicta. See, e.g. , Cruz-Guzman v. State , 916 N.W.2d 1, 11 n.7 (Minn. 2018) ("The discussion of adequacy was not dicta; it was a necessary step in the court's analysis.").[4]
The majority contends that we did not "clearly articulate in Heaney whether the privileged 'information' to be suppressed was the blood sample ... or the blood alcohol concentration test result." See ante at 631. I do not see any lack of clarity in our statement that "a blood sample taken for treatment purposes is information." Heaney , 689 N.W.2d at 173. Moreover, as shown above, the defendant in Heaney sought to suppress both the blood sample and the test result from the sample.
For all of these reasons, the majority is wrong to cast aside our decision in Heaney and reach a contrary conclusion. Based on Heaney , a blood sample taken from an accident victim receiving emergency medical treatment from a physician is protected by the privilege and inadmissible.[5]
*638 It is also important that the Legislature did not change the statute's language after our decision in Heaney . As we have said, "[t]he doctrine of stare decisis has special force in the area of statutory interpretation because the legislature is free to alter what we have done." Schuette v. City of Hutchinson , 843 N.W.2d 233, 238 (Minn. 2014).
The majority's suggestion that the doctrine of statutory stare decisis does not apply here is incorrect. The Legislature has amended the privilege statute, Minn. Stat. § 595.02, subd. 1, four times since we decided Heaney . See Act of May 16, 2013, ch. 62, § 27, 2013 Minn. Laws 16, 19 (changing language in subdivision 1(o)); Act of Apr. 29, 2013, ch. 28, § 1, 2013 Minn. Laws 1, 3 (adding language in subdivision 1(m)); Act of May 12, 2008, ch. 302, § 1, 2008 Minn. Laws 1, 3 (adding subdivision 1(l)); Act of May 1, 2007, ch. 54, § 4, 2007 Minn. Laws 1, 50 (amending language in subdivision 1(k)). The Legislature had the opportunity to change the physician-patient privilege when it changed other privileges in the same statute, but chose not to do so. The doctrine of statutory stare decisis should apply here and keep the privilege intact as we have interpreted it. See Kimble v. Marvel Entm't, L.L.C. , --- U.S. ----, 135 S.Ct. 2401, 2413, 192 L.Ed.2d 463 (2015) (noting that statutory stare decisis occurs when a court interprets a statute and then the legislature decides whether to amend it).
Finally, in creating the physician-patient privilege, the Legislature decided to protect a particular type of relationship deemed valuable to society. Privileges hold a unique place in the law and it is our duty to protect the privilege. See Nelson v. Ackermann , 249 Minn. 582, 83 N.W.2d 500, 507 (1957) ("As far as the statute goes, it creates a right with which the courts have no right to interfere."). In Staat , we said:
Despite persistent academic and judicial criticism of this evidentiary privilege as an impediment to the ascertainment of the truth, it is nevertheless our duty to enforce it to the full extent reasonably necessary for the attainment of the longstanding legislative policy for which it was created, namely, to provide a shield for safeguarding and promoting confidential communications between a patient and his attending physician.
192 N.W.2d at 196. Because the majority departs from this duty and its result is inconsistent with our precedent, I dissent.[6]
*639 I would reverse the court of appeals and affirm the district court's conclusion that the blood sample was protected by the physician-patient privilege and therefore must be excluded from evidence in this case.
Attachment *640 Websters Dictionary 1828 - Webster's Dictionary 1828 - Informtion
Webster's Dictionary 1828
Home Menu
Dictionary Search
Informtion
INFORM'TION, noun [Latin informatio.]
1. Intelligence; notice, news or advice communicated by word or writing. We received information of the capture of the ship by an arrival at Boston. The information by the messenger is confirmed by letters.
2. Knowledge derived from reading or instruction.
He should get some information in the subject the intends to handle.
3. Knowledge derived from the senses or from the operation of the intellectual faculties.
The active informations of the intellect-
4. Communication of facts for the purpose of accusation; a charge or accusation exhibited to a magistrate or court. An information is the accusation of a common informer or of a private person; the accusation of a grand jury is called an indictment or a presentment.
*641 Websters Dictionary 1828 - Webster's Dictionary 1828 - Informtion
Home (/) Preface (/Preface) History (/NoahWebster) Quotations (/Quotes) Terms and Conditions (/Terms)
(https://m.facebook.com/WebstersDictionary1828?
ref=hl)
Textus Receptus Bibles (http://textusreceptusbibles.com/)
KIB Dictionary (http://kingjamesbibledictionary.com/)
Treasury of Scripture Knowledge (http://www.tsk-online.com/)

Notably, our holdings in State v. Staat , 291 Minn. 394, 192 N.W.2d 192 (1971), and Heaney have been relied on by the court of appeals and secondary sources. See State v. Poetschke , 750 N.W.2d 301, 306 (Minn. App. 2008) (citing Heaney and holding that a blood sample drawn and tested during emergency medical treatment was protected by the physician-patient privilege and was therefore inadmissible in a criminal proceeding); 9 Henry W. McCarr & Jack S. Nordby, Minnesota Practice-Criminal Law & Procedure § 47:10 (4th ed. 2017) (stating that "information" protected by the physician-patient privilege includes physical articles, and citing Staat ).

The district court in Heaney concluded that use of a subpoena, rather than a search warrant, to acquire the blood sample from the hospital violated the defendant's due process rights. State v. Heaney , No. K5-02-262, Second Amended Omnibus Order at 4-5 (Houston Cty. Dist. Ct. filed Sept. 19, 2003). The distinction is not relevant to this case because a search warrant was used to acquire Atwood's blood sample and he has not challenged the basis for the search warrant.

In Staat , we analyzed whether two bottles of narcotic pills discovered by a hospital attendant in the defendant's clothing were protected by the physician-patient privilege from being used to prosecute the individual for a crime. Staat , 192 N.W.2d at 194. We held that the bottles of pills were not protected by the privilege because the language of the statutory privilege only applies to a "physician or surgeon, dentist, or chiropractor," which did not include the hospital attendant. Id. at 198-99. In reaching our decision, however, we concluded that the "contents of the bottles" fell "within the scope of knowledge gained by the physicians, since the statute's broad language encompasses physical articles as well as verbal communications and any other knowledge ... which [the doctor] obtained through his observation and examination." Id. at 197. The majority states that our determination in Staat that the bottles of pills were information as defined by the physician-patient privilege was not a necessary or essential part of our decision because the case was decided on a different prong of the test for applying the privilege. See supra at 630. But the reasoning in Staat is directly applicable to this case. Although we did not specifically use or analyze the term "information" in Staat , we implicitly defined that statutory term to include "the scope of knowledge gained by the physicians," including "physical articles as well as verbal communications and any other knowledge" obtained by the treating physician. Staat , 192 N.W.2d at 197. Applying the implicit definition of "information" from Staat to this case, a blood sample acquired by a physician providing emergency medical treatment would be protected by the privilege.

In Heaney , we were required to engage in a conflict-of-laws analysis because the evidence (blood sample) was obtained in another state (Wisconsin). The defendant in Heaney argued that we should apply the Minnesota physician-patient privilege and find that his blood sample was protected "information" and therefore inadmissible in court. Brief for Respondent at 24, State v. Heaney , 689 N.W.2d 168 (Minn. 2004) (No. A03-1401). The fact that we ultimately applied the Wisconsin physician-patient privilege rather than the Minnesota physician-patient privilege does not change the fact that appropriate application of the Minnesota physician-patient privilege was argued by the parties and deliberately considered by our court. Accordingly, our determination that a blood sample is "information" protected by the privilege is entitled to respect, not relegation to dicta. State ex rel. Foster v. Naftalin , 246 Minn. 181, 74 N.W.2d 249, 266 (Minn. 1956) (stating that "[t]he questions actually before the court and argued by counsel are thoroughly investigated, deliberately considered with care, and, when so investigated and considered, a decision on those issues is entitled to respect in future cases," and that "[o]biter dictum, on the other hand is a statement of the judge on an issue not so deliberately investigated and, for that reason, is not entitled to the same respect").

This result is consistent with our decision in Bearder v. State , 806 N.W.2d 766 (Minn. 2011). In Bearder , we addressed the question of whether the term "genetic information," protected by the Genetic Privacy Act, Minn. Stat. § 13.386, subd. 1 (2018), includes blood samples collected as part of newborn screening. 806 N.W.2d at 773. We held that blood samples were included. Id. at 774. As part of our analysis, we relied on the "common understanding" of "biological information" in recognizing that a blood sample is information because blood carries information. Id. at 773. The majority dismisses Bearder because the statute at issue there "included a long, technical definition of 'genetic information.' " It is true that the statute defined "genetic information." But our conclusion that the blood sample was "genetic information" depended on our conclusion that the sample was "biological information." The statute did not define "biological information," and so we relied on the "common understanding" of that term. 806 N.W.2d at 773.

Extending the logic of the rule announced today, no physical object would be protected by the physician-patient privilege. For example, if a patient provides her doctor with her medical history on a flash drive, the police could secure the flash drive with a search warrant because the flash drive is a physical object and therefore not "information" protected by the physician-patient privilege. Just as the State in this case was permitted to learn about Atwood by testing the data (blood-alcohol concentration) gleaned from his blood sample, so too would the police in the flash drive hypothetical be able to learn about the patient's medical history by opening the flash drive and retrieving and using the medical data stored on the flash drive. The majority contends that the flash-drive hypothetical is distinguishable because the documents inside the flash drive are medical records, which the majority claims are protected by the privilege. But the test result produced by the BCA from the blood sample in this case is likewise a medical record, yet the majority's holding in this case does not make it privileged. Such an odd result could be avoided if we held in this case, as we did in Heaney , that the blood sample and all of the data contained in it is "information" protected by the privilege.