**STATE of Minnesota, Respondent,**

v.

**Montell Andre DeSHAY, Appellant.**

**No. C9–01–1128.**

Court of Appeals of Minnesota.

June 11, 2002.

Mike Hatch, Attorney General, John B. Galus, Assistant Attorney General, St. Paul, and Alan L. Mitchell, St. Louis County Attorney, Duluth, for respondent.

John M. Stuart, State Public Defender, Michael C. Davis, Special Assistant Public Defender, St. Paul, for appellant.

Considered and decided by HANSON, Presiding Judge, SCHUMACHER, Judge, and PORITSKY, Judge.

## OPINION

PORITSKY, Judge.*

This is an appeal from a conviction of and sentence for conspiracy to commit first-degree controlled-substance crime, committed for the benefit of a gang. Appellant argues that (1) the "crime committed for the benefit of a gang" statute violates equal protection, (2) the evidence presented is insufficient to prove the offense, (3) the district court erred by admitting expert testimony based on the ten-point gang-identification criteria, (4) the district court abused its discretion by de-

clining to depart downward at sentencing, and (5) the district court erred by failing to suppress a tape recording of a conversation between DeShay and a paid police informant. We affirm.

## FACTS

In 1998, Robert Jackley, a paid informant for the Duluth police, became acquainted with a group of individuals involved in the sale of crack cocaine and heroin, which the individuals were transporting from Milwaukee to Duluth. Although there is no evidence that appellant Montell Andre DeShay was involved in transporting drugs, Jackley testified that DeShay sold crack cocaine once to Jackley. Another witness, Robin Raymond, testified that she purchased drugs from DeShay approximately six to eight times. Jackley and other witnesses testified that they observed DeShay sell crack cocaine to other individuals as well and that they observed DeShay associate with known gang members.

The amended complaint charged DeShay with one count of third-degree controlled-substance crime,[1] committed for the benefit of a gang, a violation of Minn.Stat. §§ 152.023, subd. 1(1), 609.229, subd. 2 (1998), and one count of conspiracy to commit first-degree controlled-substance crime,[2] committed for the benefit of a gang, a violation of Minn.Stat. §§ 152.021, subd. 1(1), 152.096, subd. 1, 609.229, subd. 2 (1998). The jury convicted DeShay of both counts.

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

1. An individual commits a third-degree controlled-substance crime by unlawfully sell[ing] one or more mixtures containing a narcotic drug. Minn.Stat. § 152.023, subd. 1(1) (1998).

2. An individual commits a first-degree controlled-substance crime by selling 10 grams or more of cocaine within a 90–day period. Minn.Stat. § 152.021, subd. 1(1) (1998).

Prior to his sentencing, DeShay filed a motion in which he sought a downward-sentencing departure and challenged the constitutionality of Minn.Stat. § 609.229 (1998) (crime committed for the benefit of a gang statute) under the Minnesota Constitution. The district court denied DeShay's motion and sentenced him to an executed term of 98 months. This appeal followed.

## ISSUES

I. Does Minnesota Statute § 609.229 (1998), the "crime committed for the benefit of a gang" statute, violate the equal protection clause of the Minnesota Constitution?

II. Was the evidence presented sufficient to support the jury's verdict in which it found DeShay guilty of conspiring to commit first-degree controlled-substance crime for the benefit of a gang?

III. Did the district court err by admitting expert testimony based on the ten-point gang-identification criteria?

IV. Did the district court abuse its discretion by declining to depart downward at sentencing?

V. Did the district court err by failing to suppress a tape recording of a conversation between DeShay and a paid police informant?

## ANALYSIS

### I.

DeShay argues that Minn.Stat. § 609.229 (1998) violates the Minnesota Constitution's guarantees of equal protection. Specifically, he argues that because there is no rational basis for distinguishing "criminal gangs" from other organized groups, the statute's provision for enhanced sentences for individuals convicted of committing crimes for a gang's benefit violates his right to equal protection.

■■■ This court recently held that Minn.Stat. § 609.229 does not violate equal protection guarantees. *State v. Frazier*, 631 N.W.2d 432, 437 (Minn.App.2001), *review granted* (Minn. Sept. 25, 2001).[3] Because "[t]he doctrine of stare decisis directs that we adhere to former decisions in order that there might be stability in the law," we decline to reconsider the question. *Oanes v. Allstate Ins. Co.*, 617 N.W.2d 401, 406 (Minn.2000) (citation omitted). Furthermore, the parties agree that if the supreme court affirms this court's holding in *State v. Frazier*, that holding will be dispositive of this issue.

### II.

DeShay also argues that the evidence did not establish that he conspired to sell ten or more grams of cocaine for a gang's benefit because the evidence was insufficient to prove the quantity of drugs that the conspiracy intended to sell.

■■■ In considering a claim of insufficient evidence, an appellate court's review is limited to a thorough analysis of the record to determine whether the evidence, when viewed in the light most favorable to the conviction, is sufficient to allow the jurors to reach the verdict that they did. *State v. Webb*, 440 N.W.2d 426, 430 (Minn. 1989). The appellate court must assume that the jury believed the state's witnesses and disbelieved any evidence to the contrary. *State v. Moore*, 438 N.W.2d 101, 108 (Minn.1989). The appellate court will not disturb the verdict if the jury, acting with due regard for the presumption of innocence and the requirement of proof beyond a reasonable doubt, could reasonably conclude that the defendant was

3. Frazier was a separately charged co-defendant of DeShay.

guilty of the charged offense. *State v. Alton*, 432 N.W.2d 754, 756 (Minn.1988).

When considering the sufficiency of circumstantial evidence, an appellate court will give it as much weight as any other kind of evidence, as long as the evidence and the reasonable inferences that can be drawn from it are consistent with the hypothesis of the defendant's guilt and inconsistent with any other rational hypothesis. *State v. Walen*, 563 N.W.2d 742, 750 (Minn.1997). This means that the circumstantial evidence must

> form a complete chain which, in light of the evidence as a whole, leads so directly to the guilt of the accused as to exclude, beyond a reasonable doubt, any reasonable inference other than that of guilt.

*Webb*, 440 N.W.2d at 430 (quotation omitted).

To prove the crime of conspiracy, the state must show "(1) an agreement between two or more people to commit a crime[,] and (2) an overt act in furtherance of the conspiracy." *State v. Kuhnau*, 622 N.W.2d 552, 556 (Minn.2001); *see* Minn. Stat. § 609.175, subd. 2 (1998).

DeShay was convicted of conspiring to sell ten or more grams of cocaine within a 90–day period. *See* Minn.Stat. §§ 152.021, subd. 1(1), .096, subd. 1 (1998). DeShay does not contend that the evidence is insufficient to prove an overt act in furtherance of the conspiracy. Instead, he argues that because the only direct evidence presented shows that he sold .01 grams of crack cocaine to Jackley during a controlled buy, the evidence is insufficient to prove that he conspired to sell ten or more grams of cocaine. A review of the record, however, shows the following evidence: (1) Jackley testified that in additional to the controlled buy, he saw DeShay sell drugs to other individuals on one or more occasions. (2) Paul Taylor testified that the group used his apartment as an outlet to sell drugs for approximately four months between November 1999 and the beginning of February 2000. During the same time frame, he also saw members of the group, including DeShay, selling drugs from Animal's (DeShay's uncle) apartment. (3) Taylor testified that drugs were sold 24 hours per day, seven days per week from his residence, and that the hours of business at Animal's residence were slightly less than those at Taylor's home. (4) Taylor testified that he observed DeShay selling drugs approximately four days per week from Animal's residence during a one-month period around December 1999 to January 2000.(5) Taylor also testified that, together, the group sold approximately 14 grams of crack cocaine every day and one-half to three days, and one to one and one-half grams of heroin per day. (6) Taylor testified that during the same time frame he drove other members of the group to Milwaukee six to eight times to pick up cocaine or heroin to bring back to Duluth. He testified that each time they picked up seven to 28 grams of cocaine, and five to ten grams of heroin. (7) Robin Raymond testified that she went on three trips to Milwaukee with various members of the group in late 1999 and early 2000. She testified that on those three trips they brought back approximately 50 grams of crack cocaine and ten grams of heroin. (8) Raymond also testified that when she did not have drugs available to sell to others, she would notify Animal, and then DeShay would deliver drugs to her. She testified that DeShay delivered crack cocaine or heroin to her six to eight times shortly after Christmas of 1999, and each time he brought crack cocaine packaged in $25 rocks and heroin in .01–gram bags.

The conspiracy statute does not require that the state prove DeShay *personally* sold ten or more grams of cocaine within a 90–day period; only that he *participated*

*in an agreement* to sell ten or more grams of cocaine within a 90–day period. According to the evidence, the group was bringing substantial quantities of cocaine and heroin to the Duluth area between November 1999 and January 2000, and DeShay participated in the sale of that cocaine and heroin. We conclude that the circumstantial evidence and the rational inferences that can be drawn from it support the jury's finding that a conspiracy to sell ten grams or more of cocaine within a 90–day period existed, that DeShay participated in the conspiracy, and that the evidence does not support any other rational hypothesis.

### III.

DeShay argues next that the district court erred by admitting testimony of Special Investigator Scott Jenkins on the question of whether an individual is a member of a gang, contending that the ten-point gang-identification criteria, on which the testimony was based, do not create a sufficiently reliable standard to support an expert opinion.

Initially, we note that DeShay's challenge on this point is to the witness's methodology; that is, the set of observations and conclusions making up the ten-point gang criteria on which the witness relied in giving his opinion that De Shay and others were gang members. This does not concern the *facts or data* on which the witness relied; the phrase "facts or data" in this context refers to the facts in the particular case in which the witness is testifying and that the witness has accepted as true in giving his opinion. *Facts or data* are to be distinguished from the

*methodology* the witness applied in giving his opinion.[4] In this case, facts or data include, for example, Jackley's testimony that members of the group transported crack cocaine and heroin from Milwaukee to Duluth, and Raymond's testimony that she bought drugs from DeShay.

The district court ruled that the ten-point gang criteria are a sufficiently reliable standard, which Jenkins could utilize in giving his opinion. On appeal DeShay challenges this ruling.

■ We agree with the state that this issue is not subject to the Frye–Mack test.[5] In *Goeb v. Tharaldson,* 615 N.W.2d 800, 814 (Minn.2000), the supreme court, in affirming the continued application of the Frye–Mack test in Minnesota, stated that "when novel *scientific* evidence is offered, the district court must determine whether it is generally accepted in the relevant *scientific* community." (Emphasis added.) We agree with the state that the gang criteria are not scientific in the sense of the Frye–Mack test as reaffirmed by *Tharaldson.*

■ Nevertheless, before any expert testimony can be admitted, the proponent must make a showing that the testimony is reliable. *Id.* ("Finally, as with all testimony by experts, the evidence must satisfy the requirements of Minn. R. Evid. 402 and 702—be relevant, be given by a witness qualified as an expert, and be helpful to the trier of fact.") As to appellate review, in *Tharaldson* the supreme court stated that under the Frye–Mack test, the appellate court makes a de novo review of the district court's ruling on a challenge to

4. *See* Bertrand Poritsky, Minnesota Evidence TrialBook 4–2—4–10 (1987 & Supp.2001), noting the distinction between "bases"—the facts in the particular case that the expert accepts as true and on which the expert bases an opinion—and "expertise"—which includes

the methodology utilized by the expert in arriving at his or her opinion.

5. *See Frye v. United States,* 293 F. 1013 (D.C.Cir.1923); *State v. Mack,* 292 N.W.2d 764 (Minn.1980).

the expert's methodology. *Id.* Although we have concluded that an expert's use of the ten-point gang criteria is not subject to the Frye–Mack test, we note that the use of the criteria is a novel technique. We conclude that the same reasoning that led the supreme court to apply a de novo review to novel scientific issues should apply to a review of the reliability of the gang criteria.

At trial, Officer Jenkins testified about the ten-point gang-identification criteria and testified that DeShay was a member of a gang known as the Black Gangsters.[6]

The criteria are that an individual: (1) admits gang membership or association; (2) is observed to associate on a regular basis with known gang members; (3) has tattoos indicating gang membership; (4) wears gang symbols to identify with a specific gang; (5) is in a photograph with known gang members and/or using gang-related hand signs; (6) has his name on a gang document, hit list or gang-related graffiti; (7) is identified as a gang member by a reliable source; (8) is arrested in the company of identified gang members or associates; (9) corresponds with known gang members or writes and/or receives correspondence about gang activities; and (10) writes about gangs on walls (graffiti), books, or paper. We note that either seven or eight of the ten criteria (that is, excepting numbers 6, 7, and, depending on the circumstances, 8) are forms of self-identification.

To be considered a gang member, a person must satisfy at least of three of the criteria. Minn.Stat. § 299C.091, subd. 2(b)(1) (1998). According to Officer Jenkins, DeShay met three of the gang criteria: he associated regularly with gang members; Melissa Sabrowski, a reliable police informant, identified him as a gang member; and he was arrested in the company of gang members. Officer Jenkins also identified seven other named individuals who participated in the group, set forth which of the criteria the seven individuals met, and identified the crimes, if any, of which they had been previously convicted.

■ ̈We conclude that there is an ample showing of the reliability of the ten-point gang criteria, sufficient to allow an expert to utilize them in forming an opinion on whether an individual is a member of a gang. The criteria were authorized by the legislature. Minn.Stat. § 299A.64, subd. 2(b) (2000). Although the precise issue of allowing an expert to base an opinion on the gang criteria has not been ruled on, Minnesota courts have admitted evidence of gang membership. *See, e.g., State v. Matelski,* 622 N.W.2d 826, 832 (Minn.App.2001) (allowing evidence of gang membership to prove that the defendant committed the crime for the benefit of a gang), *review denied* (Minn. May 15, 2001); *State v. Chuon,* 596 N.W.2d 267, 270 (Minn.App.1999) (allowing evidence of crimes committed by criminal gang members other than the defendant), *review denied* (Minn. Aug. 25, 1999). It is also apparent from Officer Jenkins's testimony that law-enforcement experts in the field also rely on the gang-identification criteria.

Furthermore, while other jurisdictions' gang-identification criteria vary to a slight degree from those of Minnesota, it is common practice for experts, whether legislative, executive or judicial, in the field of criminal gangs to rely on similar criteria when forming opinions on the subject. *See, e.g.,* Ariz.Rev.Stat. Ann. § 13–105.8 (West 2000) (requiring satisfaction of two

---

**6.** Officer Jenkins testified that the gang is also known as the New Breed, New Breed Disciples, BG, 27, and Trey Ls. He also explained the gang's origin, geographic span, power structure and splits, and derivations and interconnectedness of its various names.

of seven criteria, six of which are similar to Minnesota's); Fla. Stat. Ann. § 874.03(2) (West 2000) (requiring satisfaction of two of eight criteria, six similar to Minnesota's); S.D. Codified Laws § 22–10–14(2) (Michie 1998) (requiring satisfaction of two of seven criteria, six of which are similar to Minnesota's); Tenn.Code Ann. § 40–35–121(a)(2) (1997) (requiring satisfaction of two of seven criteria, corresponding to five of Minnesota's); *People v. Valdez,* 58 Cal. App.4th 494, 503, 506–07 & n. 11, 68 Cal. Rptr.2d 135 (1997) (allowing an officer's expert gang-membership opinion testimony based on the formal gang-identification criteria adopted by the San Jose Police Department, which requires satisfaction of two of six criteria, five of which are similar to Minnesota's), *rev. denied* (Cal. Feb. 3, 1998); *State v. Tran,* 252 Kan. 494, 847 P.2d 680, 684–86 (1993) (allowing officer's gang-membership opinion testimony based on the six gang-identification criteria established by the Los Angeles police gang unit, five of which are similar to Minnesota's); *Utz v. Commonwealth,* 28 Va.App. 411, 505 S.E.2d 380, 387–88 (1998) (allowing police detective to testify regarding gang-identification criteria based on six criteria used in Arlington County, three of which are similar to Minnesota's). Thus, it is clear that the ten gang-identification criteria are of a type relied on by experts in the field.

DeShay compares the ten-point gang-identification criteria to the drug-courier profile and urges that we follow the supreme court's reasoning in *State v. Williams,* 525 N.W.2d 538, 547–48 (Minn. 1994). But the cases are too dissimilar for *Williams* to be persuasive here. In *Williams,* the supreme court pointed out that the drug-courier profile was a form of character evidence, i.e., evidence offered to prove a trait of character in order to allow the inference that a person acted in conformity with that trait on a specific occa-

sion. *Id.* at 548. Such evidence is not generally admissible. Minn. R. Evid. 404(a). Here, there was no need for an inference to prove DeShay's actions; there was direct evidence on that point. The evidence of the gang criteria was offered to prove an element of the offense; that the crime was for the benefit of a gang. In fact, DeShay does not assert that the criteria are being used as character evidence; instead he attacks them as being an improper basis for an expert opinion.

Moreover, in *Williams,* the supreme court found the profile objectionable as substantive evidence of guilt because the profile is so elastic that everyone fits it. *See Williams,* 525 N.W.2d at 546–47 (illustrating the potential absurdity of the drug-courier profile). The gang criteria focus on a much narrower group of persons. While the drug-courier profile consists of external criteria, used to identify people who do not want to be identified, the gang-identification criteria are primarily elements of self-identification for people who have an interest in being identified with a group.

DeShay further argues that the gang-identification criteria are too broad because they could potentially describe "fringe members or wannabes," that is, persons who aspire to be gang members, but have not yet achieved that goal. But merely being a gang member is not an offense, nor is it an element of an offense. The element that gang criteria goes to prove is that the underlying crime was committed for the benefit of a gang. Either way, whether a person is a full gang member or merely aspiring to be a member, evidence of gang criteria is equally relevant to the issue of whether the crime was committed for the benefit of a gang. Thus, even assuming an aspiring gang member may be misidentified as a full gang member, the possible prejudice or

confusion this may cause does not substantially outweigh its probative value. *See* Minn. R. Evid 403 ("Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice [or] confusion of the issues").

In short, because the drug-courier profile and the gang-identification criteria are so dissimilar, we decline to apply the supreme court's reasoning in *Williams* to the present case. We conclude that Minnesota's ten-point gang-identification criteria make up a reliable standard that an expert may utilize in giving an opinion that an individual is a member of a gang. Therefore, the trial court did not err when it allowed Officer Jenkins to express the opinions that certain individuals, including DeShay, were members of a gang.

## IV.

DeShay argues that the court abused its discretion by declining to depart downward, both dispositionally and durationally.

 "[A district] court has no discretion to depart from the sentencing guidelines unless aggravating or mitigating factors are present." *State v. Spain,* 590 N.W.2d 85, 88 (Minn.1999) (citation omitted). If the district court determines that such factors are present, the decision to depart from sentencing guidelines rests within its discretion and an appellate court will not reverse absent a clear abuse of that discretion. *State v. Givens,* 544 N.W.2d 774, 776 (Minn.1996). To justify a departure, the aggravating or mitigating factors must be "substantial and compelling." *State v. Schmit,* 601 N.W.2d 896, 898 (Minn.1999) (citation omitted). "Substantial and compelling circumstances are those circumstances that make the facts of a particular case different from a typical case." *State v. Peake,* 366 N.W.2d 299, 301 (Minn.1985). An appellate court will

rarely reverse a sentencing court's refusal to depart. *State v. Kindem,* 313 N.W.2d 6, 7 (Minn.1981)

 DeShay argues that the district court should have granted his request for downward departure because he played a minor role in the conspiracy. *See* Minn. Sent. Guidelines II.D.2.a.(2), (5) (stating that the district court may depart downward when "[t]he offender played a minor * * * role in the crime" or when other mitigating factors are present). DeShay asserts that he played a minor role in the conspiracy because (1) he was not a gang member; (2) even if he was a member of a gang, he did not hold a leadership role; and (3) he never participated in the drug runs to Milwaukee. DeShay characterizes his role as a mere "go-between" or "mule," that is, one who goes between the drug suppliers and the drug sellers. DeShay notes that other jurisdictions have considered an individual's role as a "mule" to be a mitigating factor. But the cases DeShay cites for support are not applicable to the present case because, according to the evidence, DeShay was not a "mule": he was one of the drug sellers.

DeShay also contends that the district court erred by failing to consider other mitigating factors and cites *State v. Trog,* 323 N.W.2d 28, 31 (Minn.1982) for support. In *Trog,* the supreme court stated that some of the factors the sentencing court may consider when imposing a downward departure include the defendant's age, whether the defendant has a prior criminal record, whether the defendant is remorseful, whether the defendant cooperated with law-enforcement authorities, and whether the defendant has family support. *Id.* DeShay asserts that because of his youth and his minimal contact with crime, he is not amenable to incarceration. *See State v. Patton,* 414 N.W.2d 572, 575 (Minn.App. 1987) (stating that the district court prop-

erly considered a defendant's amenability to probation, and affirming the downward departure where the district court expressed concerns regarding the 19-year-old defendant's immaturity and the appropriateness of incarceration).

According to the evidence, DeShay was only 20 years old at the time of sentencing, he has a minimal juvenile criminal record and no criminal-history points, he completed his G.E.D. while he was in jail, he expresses remorse, and he cooperated with law enforcement officials. Conversely, while his family appears supportive, several of his family members are involved in drug-sale operations.

While the record contains evidence that could support a downward durational or dispositional departure, the abuse-of-discretion standard allows the district court broad discretion in its sentencing decisions. *Givens*, 544 N.W.2d at 776. This is not the rare case in which the district court abused its discretion in declining to depart dispositionally or durationally. *See Kindem*, 313 N.W.2d at 7.

## V.

█ In his pro se brief, DeShay argues that the district court erred by failing to suppress evidence of a recorded communication between DeShay and a paid police informant because the informant did not obtain DeShay's consent and the police did not have a warrant for the interception. But, as the state points out, it takes only one party to the recording to agree to being recorded, and here, the informant agreed to being recorded. *See State v. Olkon*, 299 N.W.2d 89, 102–03 (Minn.1980) (holding that a defendant's constitutional right to privacy was not violated where one of the parties to the conversation voluntarily consented to the recording of oral or telephone communications). Thus, the district court did not err by failing to suppress the recording communication.

## DECISION

Because (1) Minn.Stat. § 609.229 (1998), the crime committed for the benefit of a gang statute, is constitutional, (2) the state presented sufficient evidence to prove DeShay conspired to commit first-degree controlled-substance crime for the benefit of a gang, (3) the district court properly admitted the testimony of an expert who utilized the ten-point gang-identification criteria, (4) the district court acted within its discretion by declining to depart downward at sentencing, and (5) the district court properly admitted the tape recording of a conversation between DeShay and an informant, we affirm DeShay's conviction and sentence.

**Affirmed.**