*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1683**

State of Minnesota,
Respondent,

vs.

Albert William Brown,
Appellant.

**Filed December 12, 2016
Affirmed
Connolly, Judge**

Hennepin County District Court
File No. 27-CR-14-13125

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Linda M. Freyer, Assistant County
Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, St. Paul, Michael M. Sawers,
Special Assistant Public Defender, Briggs and Morgan, P.A., Minneapolis, Minnesota (for
appellant)

      Considered and decided by Connolly, Presiding Judge; Kirk, Judge; and Reilly,

Judge.

**CONNOLLY**, Judge

In this appeal following his conviction after a jury trial, appellant argues that the search warrants for himself and his home were not supported by probable cause because the district court erred in concluding that the confidential informant was reliable. Because we conclude that the confidential informant was reliable and the search warrants were supported by probable cause, we affirm.

## FACTS

On May 6, 2014, a deputy sheriff applied for one search warrant for a house located at 3620 Penn Avenue North (3620 Penn) in Minneapolis and another for the person of appellant Albert William Brown (the warrants).[1] In the applications for the warrants, the deputy stated that, in April 2014, he received information from a confidential reliable informant (CRI) that a man named "Mo" was selling narcotics from 3620 Penn; that persons in the residence had at least one handgun; and that another male lived with "Mo" at 3620 Penn and went by the street name "Butter." The applications for the warrants stated that the CRI

> provided names and addresses of parties known to the CRI to be involved in the distribution of narcotics to [the deputy and] . . . provided information to local law enforcement officers regarding narcotics traffickers in the twin cities metro areas in the past [that] was independently corroborated by [the deputy] and other law enforcement officers and found to be true and

---

[1] The application for the search warrant of 3620 Penn and for the search warrant of appellant's person are substantially similar, detailing nearly identical allegations and supporting circumstances.

correct.  Furthermore, [the] CRI has provided information that has led to the seizure of narcotics and weapons.

The deputy was able to identify "Mo" and showed the CRI a photo of him.  The CRI positively identified "Mo" as one of the men living at 3620 Penn that sells cocaine.  The deputy did computer checks for 3620 Penn and learned that appellant was associated with the address.  The CRI positively identified appellant as the other male, "Butter," living at 3620 Penn and selling cocaine.  The applications for the warrants also noted that Violent Offender Task Force (VOTF) officers executed a search warrant at 3620 Penn in the past and recovered a large amount of cocaine.

The applications for the warrants also stated that within 72 hours of applying for the warrants, the deputy met with the CRI, checked him for money and contraband, found none, and "[u]nder the direction and control of [the deputy] and other VOTF officers, the CRI conducted a *controlled purchase* of crack cocaine from [appellant] from the residence at 3620 Penn."  (Emphasis added).  After meeting with appellant, the CRI returned to the deputy with crack cocaine.  The deputy checked the criminal-history records for appellant and learned that he had been arrested numerous times for narcotics crimes; specifically he was found with narcotics and a loaded .223 assault rifle in 2010.  Based on "the information received from the [CRI], previous police contact history, [and] the controlled buy of crack cocaine from [3620 Penn, the deputy] believe[d] that narcotics and firearms [were] located at [3620 Penn]."

On May 6, 2014, the district court judge issued warrants for the search of 3620 Penn and for appellant's person.  The warrants were executed on May 8.  On appellant's person

3

the police found: (1) 3.5 grams of crack cocaine; (2) approximately 11 crushed pills of suspected ecstasy; and (3) $2,056 in U.S. currency. At 3620 Penn the police found: (1) two digital scales; (2) a soda bottle with 12.03 grams of suspected cocaine; (3) a bag containing 150.82 grams of marijuana; and (4) $2,205 in U.S. currency.

During his interview with police, appellant admitted that (1) everything in the house was his; (2) he lived in the basement while "Mo" lived upstairs, and (3) he and "Mo" were the only ones who lived at the house. On May 9, 2014, a complaint was filed, charging appellant with one count each of (1) first-degree sale of ten grams or more of a controlled substance (cocaine); (2) third-degree possession of three grams or more of a controlled substance (cocaine); and (3) fifth-degree sale of a controlled substance (marijuana).

On July 9, 2014, appellant filed a motion to suppress evidence arguing that the warrants were not supported by probable cause because the CRI was not reliable, the officers failed to independently corroborate the CRI's tip, and the controlled purchase did not follow the reliable procedure for conducting controlled purchases. The district court denied the motion, concluding that the judge issuing the warrants had a substantial basis to conclude that probable cause existed that contraband would be found at 3620 Penn and on appellant's person. Appellant was subsequently tried by a jury and convicted on all three counts.

## D E C I S I O N

An appellate court reviewing a district court's probable-cause determination made upon issuing a search warrant applies a deferential, substantial-basis standard of review. *State v. Rochefort*, 631 N.W.2d 802, 804 n.1 (Minn. 2001).

4

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

*State v. Souto*, 578 N.W.2d 744, 747 (Minn. 1998) (quotation omitted).

Appellant argues that the warrants for 3620 Penn and his person were not supported by probable cause because the district court erred in concluding the CRI was reliable. Courts consider six factors to assess the reliability of a confidential, but not anonymous, informant:

> (1) [A] first-time citizen informant is presumably reliable; (2) an informant who has given reliable information in the past is likely also currently reliable; (3) an informant's reliability can be established if the police can corroborate the information; (4) the informant is presumably more reliable if the informant voluntarily comes forward; (5) in narcotics cases, "controlled purchase" is a term of art that indicates reliability; and (6) an informant is minimally more reliable if the informant makes a statement against the informant's interests.

*State v. Ross*, 676 N.W.2d 301, 304 (Minn. App. 2004). The first, fourth, and sixth factors are not relevant to this case because this was not a first-time citizen informant, it is unclear whether or not the informant voluntarily came forward, and it is unclear that the CRI's statements were against his own interests.

"The second factor is fulfilled by a simple statement that the informant has been reliable in the past because this language indicates that the informant had provided accurate information to the police in the past and thus gives the magistrate . . . reason to credit the

informant's story." *Id.* (quotation omitted). In the application for the search warrant, the deputy stated:

> The CRI has provided names and addresses of parties known to the CRI to be involved in the distribution of narcotics to [the deputy]. The CRI provided information to local law enforcement officers regarding narcotics traffickers in the twin cities metro areas in the past. This information was independently corroborated by [the deputy] and other local law enforcement officers and found to be true and correct. Furthermore, this CRI has provided information that has led to the seizure of narcotics and weapons.

Appellant argues that this statement is inadequate to allow the district court to make an independent and informed decision regarding the reliability of the informant. But *Ross* specifically states that "specific details of the past veracity of the CRI" do not need to be alleged. *Id.* We conclude that the second factor favors affirming the district court's denial of the motion to suppress.

Appellant also argues that the police did not corroborate any of the facts provided by the CRI to establish reliability. The district court concluded that "officers investigated and corroborated the identities of 'Mo' and 'Butter' by conducting computer checks and obtaining a positive identification for [Mo] and [appellant] from the CRI prior to applying for a search warrant." Additionally, the district court found that "the controlled buy adds to the reliability and establishes the CRI's basis of knowledge in this case."

But in narcotics cases, "controlled purchase" is a term of art and indicates reliability. *Id.* In this case, the applications for the warrants clearly state: "[T]he CRI conducted a *controlled purchase* of crack cocaine from [appellant] from the residence at 3620 Penn." (Emphasis added). Because "controlled purchase" is an accepted term of art, we assume

that when an experienced drug enforcement officer identifies a controlled purchase as such, it is a proper controlled purchase. *See State v. Ward*, 580 N.W.2d 67, 73 (Minn. App. 1998) (concluding that when "controlled purchase" is not used in an affidavit by an experienced drug enforcement officer, it was not a proper controlled purchase).

The controlled purchase supplied corroboration for the informant's tip. The applications for the warrants state that in April 2014 the CRI told the police that "Mo" was selling narcotics from 3620 Penn and that there was another individual living there that goes by the street name "Butter." The CRI also stated that "Mo" drives a gold-colored Suburban that is parked behind the residence. The police observed a gold-colored Suburban parked behind 3620 Penn. Then, after receiving the confidential tip and within 72 hours of the issuance of the warrant, at least six days after originally getting the tip from the CRI, the police conducted a controlled purchase from appellant at 3620 Penn. All of this information was included in the four corners of the applications for the warrants. Unless the controlled purchase was improper, the controlled purchase corroborated the CRI's tip that cocaine was being sold out of 3620 Penn by "Mo" and appellant.

Appellant alleges that the controlled purchase was unreliable and thus cannot be relied upon by the magistrate in issuing the warrants. Appellant argues that the applications for the warrants (1) do not indicate whether the deputy "simply asked the informant to turn out his pockets or whether [the deputy] conducted an actual search of the informant;" (2) "fail to disclose the amount of money supplied to the informant;" (3) do not indicate whether the CRI had any other drugs or contraband or the prerecorded funds after the buy; and (4) "[did] not indicate whether the police completed a post-buy search of the [CRI] to

7

determine whether he actually purchased the crack cocaine from [appellant]." Additionally, appellant argues that the controlled purchase is not proper because it was not audio recorded by the police.

"[W]here the affidavit refers to a 'controlled purchase,' the magistrate may accept this as a term of art and presume that police searched the informant immediately before and after the alleged drug purchase and conducted surveillance of the purchase to the extent feasible." *Id.* at 71. Thus when "controlled purchase" is used as a term of art, as it was in the applications for the warrants, the police need not detail how they conducted the search of the CRI, how much money was given to the CRI to purchase cocaine from appellant, or whether they did a post-buy search of the CRI. The applications for the warrants indicate that at the end of the controlled purchase, the CRI returned and "produced a quantity of white rock like substance that [appellant] represented as crack cocaine in exchange for cash" which is more than is required. Additionally, audio recording is not required. The only requirement is that the police "conduct[] surveillance of the purchase to the extent feasible." *Id*. Because the police were not specifically required to do so, the lack of an audio recording does not make the controlled purchase unreliable.

The cases cited by appellant are inapposite because they do not involve a "controlled purchase" as a term of art to establish reliability for probable cause. *State v. McIntosh* held that the use of evidence of drug transactions on other dates pertaining to separate charged offenses cannot support a finding of three or more separate transactions to justify a sentencing departure. 641 N.W.2d 3, 9 (Minn. 2002). In that case, a CRI conducted five

8

controlled purchases but whether the controlled purchases were reliable was not even mentioned or analyzed. *Id.* at 5.

*State v. DeShay* involved a paid CRI who testified that the defendant had sold him cocaine one time. 645 N.W.2d 185, 188 (Minn. App. 2002), *review granted* (Minn. Aug. 20, 2002). The appellant in *DeShay* argued that the only direct evidence presented showed that he sold 0.01 grams of crack cocaine to a CRI during a controlled purchase and that was not sufficient to prove that he conspired to sell ten or more grams of cocaine. *Id.* at 190. The court concluded that circumstantial evidence and rational inferences drawn from the controlled purchase and other testimony elicited at trial supported the jury's finding that a conspiracy to sell ten grams or more of cocaine within a 90-day period existed. *Id.* at 191. The court in *DeShay* did not express any displeasure with the reliability of the controlled purchase.

Finally, appellant cites to *State v. Ascheman* to support his argument that the controlled purchase was unreliable. *Ascheman* involved an undercover police officer who wore a "body wire" to record a conversation when she purchased marijuana from the appellant. *State v. Ascheman*, 589 N.W.2d 486, 488 (Minn. App. 1999). The issue in the case was whether the district court abused its discretion in instructing the jury. *Id*. at 489. *Ascheman* was not a controlled purchase with a CRI and the court did not discuss a proper protocol for conducting a controlled purchase. It was merely a case where an undercover police officer wore a wire. Neither *McIntosh*, *DeShay*, nor *Ascheman* discuss or mention any safeguards required to establish a reliable controlled purchase and are not controlling here.

Because the CRI and the controlled purchase were reliable, the district court did not err in determining that there was a fair probability that contraband or evidence of a crime would be found at 3620 Penn and on appellant's person. We conclude that the district court did not err in denying appellant's motion to suppress the evidence found when the warrants were executed.

**Affirmed.**