*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0519**

State of Minnesota,
Respondent,

vs.

Ian Ryo Anderson,
Appellant.

**Filed February 27, 2017
Affirmed in part, reversed in part, and remanded
Hooten, Judge**

Anoka County District Court
File No. 02-CR-14-3791

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Anthony C. Palumbo, Anoka County Attorney, Jon C. Audette, Assistant County Attorney, Anoka, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Renée Bergeron, Special Assistant Public Defender, St. Paul, Minnesota (for appellant)

        Considered and decided by Hooten, Presiding Judge; Peterson, Judge; and Larkin,

Judge.

## U N P U B L I S H E D   O P I N I O N

**HOOTEN**, Judge

        In his appeal from his conviction of nine marijuana-related possession and

conspiracy charges, appellant argues that the state failed to present sufficient evidence of

the weight of the marijuana, the prosecutor committed misconduct constituting reversible error, and the district court improperly convicted him of lesser-included offenses. We affirm in part, reverse in part, and remand.

**FACTS**

In October 2012, acting on a tip from a local resident, police discovered two large marijuana grow sites located in the woods near a commercial development area. After police surveillance photographed three men in the grow sites, officers apprehended appellant Ian Ryo Anderson and two other men exiting the grow sites carrying large duffel bags. The three duffel bags contained marijuana weighing approximately 7.01 kilograms.

Police officers removed the marijuana plants from the grow sites and transported them to a police garage in a dump truck. In the garage, police began "gleaning" the plants, which is a process of drying and separating the salable from the non-salable portions of the marijuana plant. After gleaning, the total weight of the marijuana taken from the grow sites was 50.63 kilograms, for a total recovered weight of 57.64 kilograms of marijuana.

Anderson was charged with two counts each of: second-degree possession of marijuana (50 kilograms or more), second-degree conspiracy to commit possession of marijuana (50 kilograms or more), third-degree possession of marijuana (10 kilograms or more), and third-degree conspiracy to commit possession of marijuana (10 kilograms or more), as well as one count of fleeing a police officer on foot.

At the conclusion of the trial, the jury found Anderson not guilty of both counts of second-degree possession of marijuana (50 kilograms or more), but found him guilty of the seven remaining counts. The district court entered judgment of conviction in accordance

2

with the jury's verdict. The district court also entered judgment of conviction on two additional counts for which he was never charged: fifth-degree possession of marijuana, and possession of a small amount of marijuana. This appeal follows.

**D E C I S I O N**

**I.**

Anderson first argues that the evidence presented by the state was insufficient to support his conviction of all of the marijuana possession and conspiracy charges because the state failed to offer proof of the weight of the marijuana exclusive of mature stalks and other debris. We disagree.

When considering a claim of insufficient evidence, our review "is limited to a painstaking analysis of the record to determine whether the evidence, when viewed in a light most favorable to the conviction, was sufficient to permit the jurors to reach the verdict which they did." *State v. Webb*, 440 N.W.2d 426, 430 (Minn. 1989). We assume the jury reconciled conflicting witness testimony in a manner that supports the conviction and disbelieved testimony to the contrary. *State v. Moore*, 438 N.W.2d 101, 108 (Minn. 1989). This presumption extends to conflicting expert testimony. *See State v. Schneider*, 597 N.W.2d 889, 895 (Minn. 1999). In sum, we will not disturb the verdict "if the jury, acting with due regard for the presumption of innocence and for the necessity of overcoming it by proof beyond a reasonable doubt, could reasonably conclude that a defendant was proven guilty of the offense charged." *Bernhardt v. State*, 684 N.W.2d 465, 476–77 (Minn. 2004) (alteration omitted) (quotation omitted).

Minnesota defines marijuana as all parts of the cannabis plant, except "mature stalks." Minn. Stat. § 152.01, subd. 9 (2012). Anderson and the state offered conflicting expert evidence as to whether the bags of marijuana contained mature stalks.

The state offered direct evidence on the absence of mature stalks in the form of expert testimony from a forensic chemist who examined the bags of marijuana. The state's chemist testified that the total weight of the marijuana seized was over 57 kilograms and that during her analysis of representative samples taken from each of the bags of marijuana she "did not note anything other than . . . marijuana." Anderson offered direct evidence regarding the presence of mature stalks in the form of expert testimony of a molecular biologist employed in the legal cannabis industry in Colorado. The biologist testified that he noted the presence of mature cannabis stalks, non-cannabis plants, tree branches with bark, and other foreign materials in the bags of marijuana.

### a. Third-degree possession (10 kilograms or more) conviction

After reconciling the conflicting expert testimony regarding the presence or absence of stalks, the jury found Anderson not guilty of both counts of second-degree possession of marijuana (50 kilograms or more), but guilty of both counts of third-degree possession of marijuana (10 kilograms or more). Based on these verdicts, we are able to conclude that the jury found the state presented enough evidence to prove beyond a reasonable doubt that Anderson possessed marijuana weighing more than ten kilograms, but less than 50 kilograms.

Anderson correctly notes that our decision in *State v. Gallus* requires the state to offer proof of the weight of the marijuana without the stalks in order to secure a conviction

4

on a marijuana possession charge. 481 N.W.2d 116, 119 (Minn. App. 1992), *review denied* (Minn. Mar. 26, 1992). However, *Gallus* does not dictate the outcome here. In *Gallus*, the state conceded that the weight of the marijuana at issue included the weight of mature stalks. *Id*. at 118 ("The state argues that [the fifth-degree controlled substance crime] statute is violated even if the mature stalk of a marijuana plant is included to determine its weight."). In this case, the state presented expert testimony that the weight of the marijuana was exclusive of mature stalks.

The state also offered testimony of one of the police officers who removed the marijuana from the grow sites. The officer testified that the police collected so many marijuana plants from the grow sites that it was necessary for the lead detective to pick up "a one-ton city dump truck . . . because we knew we needed a truck larger than any of the pickup trucks that we have to haul this much evidence back."

In addition, the state presented evidence that the marijuana in the large duffel bags carried by Anderson and his accomplices weighed just over seven kilograms. This marijuana was collected by Anderson and his accomplices, not the state. Anderson's own expert indicated that the marijuana in the duffel bags contained a "markedly different" level of mature stalks, and the bags of marijuana collected by the state had a "significantly [larger] quantity of mature stalks and foreign non-cannabis plant material" than those collected by Anderson and his accomplices. The state introduced all of the marijuana into evidence, and the jury was able to inspect it through clear bags during their deliberations.

The jury was entitled to infer from the totality of the circumstances that Anderson possessed more than ten kilograms of marijuana, even if it did not fully credit the state's

expert testimony that Anderson possessed more than 50 kilograms. *Cf. State v. Olhausen*, 681 N.W.2d 21, 26 (Minn. 2004) (determining that "a combination of factors" were sufficient to find defendant "guilty of controlled substance . . . possession crimes" despite lack of direct evidence of weight of substance, because substance was not recovered). The direct testimony of the state's witnesses and the admission of Anderson's own expert that the seven kilograms from the duffel bags did not contain a significant amount of mature stalks, combined with the other direct evidence provided by the state, specifically the numerous large bags of marijuana the jury was able to visually inspect, point directly to a patently obvious conclusion that Anderson possessed at least ten kilograms of marijuana. Therefore, we affirm Anderson's third-degree possession convictions.

**b. Conspiracy to commit second-degree possession**

The crime of conspiracy to possess a controlled substance requires the state to prove beyond a reasonable doubt that (1) there was an agreement to commit a controlled-substance crime and (2) one of the parties to that agreement committed an overt act in furtherance of the conspiracy. *See* Minn. Stat. §§ 152.096, subd. 1 (prohibiting conspiracy to commit controlled-substance crimes) (2012), 609.175, subd. 2 (identifying elements of conspiracy crime) (2012); *see also State v. Kuhnau*, 622 N.W.2d 552, 556 (Minn. 2001) (discussing elements of controlled-substance conspiracy crime). Because conspiracy is an anticipatory crime, the crime that is the object of the conspiracy need not be completed. *See* Minn. Stat. § 609.175, subd. 2.

Anderson's co-conspirator testified that the cultivation operation was a joint effort that included Anderson. The co-conspirator further testified that the duffel bags the men

removed from the grow sites on the day of their arrest contained marijuana taken from the grow sites. Further, police officers testified that trail cameras[1] set up in the grow sites photographed three men in the grow sites, and led police to stake out possible exit routes from the sites. The officers then apprehended Anderson and his co-conspirator exiting the grow sites on foot carrying duffel bags containing marijuana, using one identified exit route. This testimony and corroborating evidence is sufficient to support a finding that Anderson entered into an agreement to commit a controlled-substance crime, the first element of conspiracy.

While the jury may not have agreed that Anderson possessed over 50 kilograms at the time of his arrest, the conspiracy statute does not require that the state prove a specific weight element. *See, e.g., State v. DeShay*, 645 N.W.2d 185, 190–91 (Minn. App. 2002) ("The conspiracy statute does not require that the state prove DeShay *personally* sold ten or more grams of cocaine within a 90–day period; only that he *participated in an agreement* to sell ten or more grams of cocaine within a 90–day period."), *aff'd*, 669 N.W.2d 878 (Minn. 2003). Here, when the totality of the evidence is viewed in a light most favorable to the verdict, the inferences drawn from the size of the grow sites, the amount of marijuana seized, and the ongoing nature of the cultivation operation support a conclusion by the jury that Anderson agreed to engage in a cultivation operation that would result in his possession of over 50 kilograms of marijuana.

---

[1] A trail camera is a motion-activated stationary camera commonly used to observe wildlife.

Anderson's co-conspirator also testified that part of the co-conspirator's role in the operation was to apply chemicals to the marijuana plants and apply tin foil to the base of the plants in order to prevent rodent damage. A police officer testified that he found shovels, fertilizer, and tin foil at the grow sites. This testimony, corroborated by the physical evidence recovered from Anderson and his co-conspirators upon their exit from the grow sites, is sufficient to support a finding that at least one member of the conspiracy took overt actions in furtherance of the conspiracy.

The state provided both direct and circumstantial evidence that Anderson entered into an agreement to commit second-degree possession of marijuana (50 kilograms or more) and that one of his co-conspirators took overt actions in furtherance of the conspiracy.[2] Therefore, we affirm his conviction of conspiracy to commit second-degree possession of a controlled substance.

## II.

Anderson next argues that two instances of prosecutorial misconduct require a new trial. First, Anderson alleges that the state's expert misstated the law and misled the jurors by suggesting that mature stalks are not excluded when determining the weight of marijuana. Second, Anderson alleges that the prosecutor improperly shifted the burden of proof on the issue of the weight of the marijuana to Anderson.

An appellate court's "standard of review for claims of prosecutorial error depends on whether an objection was raised at the time of the alleged error." *State v. Yang*, 774

---

[2] Likewise, the same evidence is sufficient to establish that Anderson conspired to commit third-degree possession of a controlled substance.

N.W.2d 539, 559 (Minn. 2009). Because Anderson did not object to the prosecutor's conduct at trial, we review under a modified plain error standard. *Id.* This standard requires Anderson to establish that the prosecutor committed an error and that the error was plain. *State v. Ramey*, 721 N.W.2d 294, 302 (Minn. 2006). An error is plain if the prosecutor's conduct "contravenes case law, a rule, or a standard of conduct." *Id.*

If Anderson demonstrates that a plain error occurred, the burden shifts to the state to demonstrate that the error did not affect Anderson's substantial rights. *Id.* "If the state fails to demonstrate that substantial rights were not affected, the appellate court then assesses whether it should address the error to ensure fairness and the integrity of the judicial proceedings." *State v. Davis*, 735 N.W.2d 674, 682 (Minn. 2007) (quotation omitted). Ultimately, we will reverse a conviction "only if the [prosecutorial] misconduct, when considered in light of the whole trial, impaired the defendant's right to a fair trial." *State v. Powers*, 654 N.W.2d 667, 678 (Minn. 2003).

### a. State's expert testimony

Anderson argues that the state's expert witness, a forensic chemist, misstated Minnesota "mixture law," that this error was plain, and that this error affected Anderson's substantial rights. While the state's expert committed plain error by incorrectly stating the mixture law, we conclude that this error did not negatively affect Anderson's substantial rights.

The state's expert testified that marijuana, like all other controlled substances, was subject to the "mixture law," which she understood to mean that "if you have a controlled substance that's mixed together with a non-controlled substance, it's still charged as the

total weight."[3] This is a misstatement of the law regarding mixtures containing marijuana. The statutory definition of marijuana excludes mature stalks, and this applies equally to mixtures containing marijuana. *See* Minn. Stat. § 152.01, subd. 9 ("'Marijuana' means all parts of the plant of any species of the genus Cannabis . . . , but shall not include the mature stalks of such plant. . . ."); *Gallus*, 481 N.W.2d at 118 ("The definition of marijuana excludes mature stalks even when marijuana is used in a mixture with other substances.").

However, the expert's error did not affect Anderson's substantial rights because the jury was not misled by this misstatement of the mixture law. In closing arguments, both Anderson and the state acknowledged that the state had to prove the weight of the marijuana exclusive of mature stalks, but that expert testimony differed as to the presence or absence of mature stalks. If the jury believed the state's expert, the jury would have found that Anderson possessed the amount of marijuana that the state's expert testified was contained in the mixture: 57 kilograms. Consequently, the jury would have found Anderson guilty of second-degree possession of marijuana, which requires he possess 50 kilograms or more.

Thus, as evidenced by its finding Anderson not guilty of the second-degree marijuana possession charge, we conclude that the jury did not fully credit the testimony of the state's expert witness, and the expert's misstatement of the mixture law did not negatively affect Anderson's substantial rights or impair his right to a fair trial.

---

[3] Later in her testimony, the state's expert clarified that, as a forensic chemist, she was trained to separate the stems and leaves from the stalk of a full marijuana plant, and that she was aware that the legal definition of marijuana does not include mature stalks.

### b. Improper burden shifting

Anderson argues that the prosecutor improperly shifted the burden of proving the weight of the marijuana to the defense during cross-examination of Anderson's expert witness and again during closing arguments. We disagree.

When cross-examining Anderson's expert, the prosecutor asked: "You didn't attempt to determine what weight those, in your view, non-marijuana items would amount to. That wasn't something you were tasked to do?" Anderson's expert responded that he was not tasked to weigh the non-marijuana items and he did not "believe it would have been possible." During closing arguments, the prosecutor informed the jury that Anderson's expert did not weigh the mature stalks and debris he found in the bags.

However, shortly thereafter in the closing argument, the prosecutor told the jury that "the state in this case has the obligation for the charge of second degree controlled substance to prove to you beyond a reasonable doubt that the amount of controlled substance that was possessed is in excess of 50 kilograms." Thus, it is clear that the prosecutor explicitly stated to the jury that the state had the burden of proving the total weight of the marijuana, and did not shift the burden to Anderson.

Even if these statements constituted plain error, we cannot say that they impaired Anderson's right to a fair trial. If the prosecutor improperly shifted the burden to Anderson to prove the marijuana did not meet the 50-kilogram requirement, the jury determined that Anderson met that burden, as demonstrated by the fact that the jury found Anderson not guilty of the second-degree marijuana possession charge. And, as we have said, the evidence that Anderson possessed at least ten kilograms, and was guilty of third-degree

11

marijuana possession, was overwhelming. Therefore, any error did not affect Anderson's substantial rights.

**III.**

Finally, Anderson argues that the district court erred by convicting him of lesser-included offenses. We agree.

Minn. Stat. § 609.04 (2012) prohibits conviction for a lesser-included offense, which includes both a "lesser degree of the same crime" or a "crime necessarily proved if the crime charged were proved." A lesser crime is necessarily proved, in relation to the charged crime, "if it is impossible to commit the latter without also committing the former." *State v. Roden*, 384 N.W.2d 456, 457 (Minn. 1986). In making this determination, we look to the statutory elements of the crime, not the facts of the case. *Id.* The application of section 609.04 is a question of law that appellate courts review de novo. *State v. Cox*, 820 N.W.2d 540, 552 (Minn. 2012).

Anderson's warrant of commitment indicates that he was convicted of both third-degree possession of marijuana (ten kilograms or more) and fifth-degree possession of marijuana. Fifth-degree possession is a lesser degree of marijuana possession than third-degree. *See* Minn. Stat. §§ 152.023, subd. 2(a)(5) (2012); 152.025, subd. 2(a)(1) (2012).

Further, Anderson was convicted of possession of a small amount of marijuana. Because it is impossible to possess ten kilograms of marijuana without also possessing a small amount of marijuana, possession of a small amount of marijuana is a lesser-included offense of third-degree possession of marijuana within the meaning of section 609.04. *See* Minn. Stat. § 152.027, subd. 4(a) (2012).

12

Anderson was also convicted of both conspiracy to commit second-degree possession of marijuana and conspiracy to commit third-degree possession of marijuana. These charges share the same elements, except that conspiracy to commit second-degree possession requires an agreement to possess 50 kilograms of marijuana, while conspiracy to commit third-degree possession requires an agreement to possess ten kilograms of marijuana.[4] *See* Minn. Stat. §§ 152.022, subd. 2(a)(4) (2012); 152.023, subd. 2(a)(5); 152.096 (2012); 609.175 (2012). Because it is impossible to agree to possess 50 kilograms of marijuana without also agreeing to possess ten kilograms of marijuana, conspiracy to commit third-degree possession is a lesser-included offense of conspiracy to commit second-degree possession within the meaning of section 609.04.

Because Anderson's convictions for fifth-degree possession of marijuana, possession of a small amount of marijuana, and conspiracy to commit third-degree possession of marijuana are all lesser-included offenses within the meaning of section 609.04, we reverse those convictions and remand with instructions that they be vacated. *See State v. LaTourelle*, 343 N.W.2d 277, 284 (Minn. 1984).

**Affirmed in part, reversed in part, and remanded.**

---

[4] The second-degree possession of marijuana statute has since been amended to lower the threshold weight from 50 kilograms to 25 kilograms of marijuana, and to criminalize possession of 100 or more marijuana plants. *See* Minn. Stat. § 152.022, subd. 2(a)(6) (2016).